Revised December 21, 2001

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————

No. 99-41216

———————

ALBERTO VALDEZ,

Petitioner - Appellee,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent - Appellant.

Appeals from the United States District Court
For the Southern District of Texas

December 3, 2001

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Janie Cockrell, Director of the Texas Department of Criminal Justice, Institutional Division ("the Director"), appeals the district court's grant of the writ of habeas corpus to the petitioner, Alberto Valdez ("Valdez"). We hold that a full and fair hearing is not a prerequisite to the application of 28 U.S.C. § 2254's deferential scheme. Therefore, we vacate and remand to the district court for an assessment of Valdez's claims applying the standards set forth in § 2254(d) and (e)(1). With

respect to the Director's appeal of the district court's evidentiary rulings, we affirm in part and vacate in part.

## I

A Texas jury found Valdez guilty of the capital murder of Police Sergeant J.D. Bock in May 1988.[1] Following the sentencing phase, the jury answered the two special issue questions in the affirmative, finding that the act had been deliberate and that Valdez posed a future danger to society.[2] The court then imposed a sentence of death. Valdez's conviction and sentence were affirmed on direct appeal. *See Valdez v. State*, 776 S.W.2d 162 (Tex. Crim. App. 1989) (en banc), *cert. denied*, *Valdez v. Texas*, 495 U.S. 963, 110 S. Ct. 2575 (mem.), 109 L. Ed. 2d 757 (1990).

Valdez filed a state habeas petition, raising twenty-four legal issues. The state habeas court held a two-day hearing in November of 1990. At this hearing, Valdez presented evidence of his ineffective assistance of counsel claim.[3] Valdez's theory was that if his trial counsel had investigated his background, they would have found significant evidence that Valdez was mentally retarded, suffered abuse as a child at the hands of his father, and had behaved as a model prisoner during his

---

[1]     For a recitation of the facts surrounding the crime and the testimony at trial, see *Valdez v. State*, 776 S.W.2d 162 (Tex. Crim. App. 1989) (en banc).

[2]     The special issues submitted to the jury were: (1) was the conduct of the Defendant, Alberto Valdez, that caused the death of the deceased, Joseph Bock, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?; (2) is there a probability that the Defendant, Alberto Valdez, would commit criminal acts of violence that would constitute a continuing threat to society? *See* Tex. Crim. Pro. Code Ann. Art. 37.07(b) (Vernon 1981).

[3]     Valdez also presented testimony regarding his juror misconduct claim. He alleged that one juror visited the crime scene during the trial. The state habeas court found this claim to be without merit. Likewise, the federal district court found this to be without merit. This claim is not before us on appeal.

previous periods of incarceration. Valdez argued that had the jury heard such evidence there was a reasonable probability that the jury would have answered one of the special questions differently, sparing his life. After the presentation of witnesses, the hearing recessed to allow both parties to secure additional witnesses if necessary.

On a motion by the parties to close the proceeding, the state habeas court held a final hearing on the proposed findings. During that hearing, counsel for Valdez and the State presented lengthy arguments as to those findings. One month later, the state habeas court issued findings of fact and law denying Valdez relief.

The state habeas court held that Valdez's trial counsel was not deficient and that any deficiency did not prejudice Valdez. The habeas court found that the trial counsel's lack of investigation into Valdez's background was reasonable. School records, admitted into evidence during the hearing, indicated that Valdez had a full scale I.Q. of 73 and had been classified as educable mentally retarded. The court found that the fact that Valdez had dropped out of school did not put his counsel on notice to inquire into these school records because it found that it was common for Hispanic males in the Corpus Christi, Nueces County, Texas area to drop out of school. With regard to a conviction in Hockley County, trial counsel had received the penitentiary packet containing the conviction and judgment but had not requested the underlying pleadings. These pleadings contained a letter from his attorney in that case requesting a psychiatric evaluation of Valdez, and the resulting evaluation, which would have also shown that Valdez had a full scale I.Q. of 63 and was determined to be of borderline intelligence. The state habeas court concluded that the failure to request these pleadings did not fall beyond the professional standard of conduct for defense attorneys. Moreover, the state habeas court found that the defendant had knowledge of this

-3-

psychological testing and had not made it known to his attorneys.

As for the presentation of witnesses regarding Valdez's childhood background and other humanizing elements, the court also rejected the claim that counsel had been deficient. The habeas court found that Valdez's "drug use, childhood abuse and hardship, creativity, artistic talent, kindliness towards family was known and available to the applicant at the time of trial." *Ex parte Valdez*, No. 87-CR-1459-B at 10 (117th Dist. Ct., Nueces County, Tex., Mar. 31, 1997) (unpublished). Furthermore, the court found that "evidence of kindness and family assistance was presented at the punishment phase by the testimony of applicant's brother Daniel Valdez, Mary Jane Barrientes, Julie Saldana, and Maria Saldana." *Id.* In light of these facts, the habeas court concluded that the additional witness testimony offered during the habeas hearing on these matters would have been cumulative and the failure to present this evidence was "a decision of trial strategy which was sound and reasonable as judged at the time of the trial." *Id.* at 11. More generally, the state habeas court found that trial counsel "exercised reasonable and sound judgment in deciding which individuals to present as punishment witnesses." *Id.* at 8. Finally, without specific findings of historical fact, the state habeas court concluded that trial counsel's failure to present the mitigating evidence offered in the habeas hearing had not prejudiced Valdez. The state habeas court reached no conclusion as to whether Valdez was mentally retarded, noting that it rejected Valdez's Eighth Amendment claim "without deciding the issue of Valdez's mental retardation." *Id.* at 19.

Based on these findings and conclusions, the Texas Court of Criminal Appeals affirmed the denial of habeas relief in a one-page order. *See Ex parte Valdez*, Application No. 31,184-01 (Aug. 13, 1997) (unpublished order). The 117th District Court of Nueces County set Valdez's execution for January 14, 1998. The United States District Court for the Eastern District of Texas granted

Valdez a stay of execution and appointed counsel.

Valdez then filed the instant § 2254 petition in the United States District Court for the Southern District of Texas and requested an evidentiary hearing. The district court granted Valdez an evidentiary hearing with regard to his ineffective assistance of counsel claim. It did so because it determined that Valdez had not received a full and fair hearing before the state habeas court. Because Valdez had not received such a hearing, the district court concluded that, under *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), an evidentiary hearing was mandatory.[4]

The district court determined that the state habeas court denied Valdez a full and fair hearing because the state habeas court lost the exhibits admitted into evidence during the hearing, and, as a result, excluded those exhibits from its resolution of Valdez's case. These lost exhibits included: (1) the results of intelligence tests conducted on Valdez at age thirteen by the Corpus Christi School District; (2) the results of intelligence tests conducted on Valdez at age eighteen by the Big Spring State Hospital, and the accompanying psychiatric evaluation issued by the hospital; and (3) the fee applications submitted by Carl Lewis and David Gutierrez, his trial counsel. The district court also found that "it appear[ed] that other crucial evidence was excluded from proceedings," namely, the trial transcript, as the state habeas judge informed the parties at the hearing on the proposed findings that he "had never read the record of the trial" and that he "did not intend to" as he did not "have the time." *See* Order for Evidentiary Hr'g (S.D. Tex. Jan. 13, 1999) (unpublished) at 10 n.8. (quoting

---

[4]    In *Townsend*, the Supreme Court held that where a petitioner shows the existence of a genuine dispute of material fact, which if resolved in his favor would grant him relief, and he has been denied a full and fair hearing in the state proceedings, a federal evidentiary hearing is mandatory. *See* 372 U.S. at 312-13 , 83 S. Ct. at 757, *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6, 112 S. Ct. 1715, 1717-18, 118 L. Ed. 2d 318 (1992) (holding that where the petitioner has failed to develop a claim in state court proceedings, he must establish cause and prejudice in order to receive a federal evidentiary hearing).

State Habeas Hr'g on Proposed Findings Tr. at 144-45). Consequently, according to the district court, "the [state habeas] judge denied Valdez's petition without seeing evidence which might have been favorable to Valdez, which the judge did not rule must be excluded, and which the judge even indicated had to be reviewed." *Valdez v. Johnson*, 93 F. Supp. 2d 779, 782 (S.D. Tex. 1999).

The court found that the "exclusion" of exhibits also resulted in a failure to develop the state factual record, which Valdez had not caused. Hence, the district court concluded that 28 U.S.C. § 2254(e)(2)[5] did not bar an evidentiary hearing.[6] Moreover, as discussed above, *Townsend* required an evidentiary hearing. Alternatively, the district court found it had the discretion to order an evidentiary hearing under Rule 8 of the Rules Governing § 2254 Cases.[7]

---

[5]     28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
    (A) the claim relies on—
        (I) a new rule of constitutional law, made retroactively applicable to cases on collateral review by the Supreme Court, that was previously unavailable, or (ii) a factual predicate that could not have been discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

[6]     The district court reached its decision prior to the Supreme Court's decision in *Michael Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) in which the Supreme Court confirmed that § 2254(e)(2) did not bar evidentiary hearings when the failure to develop the record did not result from the prisoner's neglect or lack of due diligence.

The Supreme Court handed down two decisions that we cite in this opinion in which the petitioner has the last name "Williams." We distinguish between those two decisions by including the petitioners' first names in our citation of these cases.

[7]     Rule 8(a) of the Rules Governing § 2254 Cases provides:

After the evidentiary hearing,[8] the district court granted habeas relief concluding that Valdez's attorneys were ineffective in their preparation for and presentation at sentencing. In reaching this conclusion, the district court reviewed Valdez's ineffective assistance of counsel claim de novo. The district court found that the deferential framework set forth at § 2254(d) and 2254(e)(1) "largely d[id] not apply" because it had held an evidentiary hearing to remedy the state's denial of a full and fair hearing. *Valdez*, 93 F. Supp. 2d at 777 (S.D. Tex. 1999). Therefore, it applied the presumption of correctness only to the state habeas court's specific findings of historical fact, namely: (1) "it is common in the Corpus Christi, Nueces County Texas area for Hispanic males to drop out of school"; (2) "[t]he fact that the applicant had dropped out of school did not put Carl Lewis on notice of any potential mental problem, if any"; and (3) "Carl Lewis's failure to request the entire court jacket regarding the applicant's burglary charge in Hockley County did not fall below the professional standard of conduct for defense attorneys." *See id.* at 778 n.20 (quoting *Ex parte Valdez*, No. 87-CR-1459-B at 7 (117th Dist. Ct., Nueces County, Tex., March 31, 1997)). The district court then applied a preponderance of the evidence standard to the remainder of the evidence presented at the evidentiary hearing and assessed Valdez's ineffective assistance claim, a question of mixed law and fact, de novo.

---

If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

[8] The federal evidentiary hearing was, in many respects, a reprise of the state hearing. With the exception of Dr. George Parker, a psychologist called by the State, and trial counsel David Gutierrez, all of the witnesses that testified had testified in the state habeas hearing.

The Director appeals the district court's grant of habeas relief on the grounds that (1) the district court erred in finding that the state court denied Valdez a full and fair hearing; (2) even if Valdez was denied a full and fair hearing, such a hearing is not a prerequisite to the operation of the deference required under § 2254; (3) even under de novo review, Valdez received effective assistance of counsel; and (4) the district court exceeded its remedial powers by directing the State to resentence Valdez or to impose a sentence of less than death. Additionally, the Director appeals the district court's exclusion of evidence offered by the Director at the evidentiary hearing.

## II

In reviewing a grant of the writ of habeas corpus, we review the district court's findings of fact for clear error. We review de novo the district court's disposition of pure issues of law and mixed issues of law and fact. *See Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).

The Director disputes the district court's finding that the state habeas court denied him a full and fair hearing, challenging both the legal conclusion and the conclusion's factual underpinning. We need not address that dispute because we find that even if the state habeas court denied Valdez such a hearing, a full and fair hearing is not a prerequisite to the operation of AEDPA's deferential scheme.[9]

AEDPA limits the power of federal courts to grant writs of habeas corpus to those instances in which the state court's adjudication on the merits "resulted in a decision that was contrary to, or

_____

[9] Valdez filed his federal habeas petition on January 30, 1998, well after the effective date of AEDPA. *See* Pub. L. 104-132, 110 Stat. 1214 (1996). Accordingly, apart from the contention that a full and fair hearing bars the application of the AEDPA's standards, there is no dispute that AEDPA applies to Valdez's application.

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Under AEDPA, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Terry Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000). We review questions of law and mixed questions of law and fact under the "contrary to" and "unreasonable application" prong of 28 U.S.C. § 2254(d). *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

Section 2254(d)'s deference operates when the state court has adjudicated the petitioner's claim on the merits. *See* 28 U.S.C. § 2254(d). An "adjudication on the merits" occurs when the state court resolves the case on substantive grounds, rather than procedural grounds. *See Mercadel v. Cain*, 179 F.3d 271, 273 (5th Cir. 1999) (holding that whether an adjudication on the merits has occurred is whether the state court disposed of the case on substantive or procedural grounds); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (finding that where a state habeas court decided the habeas applicant's claim on procedural grounds, there had not been an "adjudication on the merits").

In *Terry Williams*, 529 U.S. at 408, 120 S. Ct. at 1521, the Supreme Court found that a state court's adjudication falls under the "unreasonable application" prong when it "unreasonably applies the law of th[e Supreme] Court to the facts of a prisoner's case." The Court held that the test for whether a state court has unreasonably applied clearly established federal law is an objective one, which it framed as:

Stated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case.

*Id.* at 409-10, at 1521-22. Thus, it is not enough that a single reasonable jurist may agree with the application.[10]

While the Court did not fully elucidate the meaning of unreasonable, it carefully distinguished an unreasonable application from an erroneous application of federal law. According to the Supreme Court, a state court's erroneous or incorrect application per se is insufficient to allow issuance of the writ. *Id.* at 410-11, at 1522. The Court stated:

Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411*,* at 1522.

Thus, a state court application may be incorrect in our independent judgment and, yet, reasonable. *See Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001), we explored the level of deference to be accorded a state court decision under this standard and found that "we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"

---

[10]     In *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), we found the state court's application of federal law to be reasonable under a subjective test. In *Terry Williams*, the Supreme Court rejected *Drinkard*'s subjective test. *See Terry Williams*, 529 U.S. at 410, 120 S. Ct. at 1522; *see also Moore v. Johnson*, 225 F.3d 495, 501 n.1 (5th Cir. 2000) (acknowledging the Supreme Court's rejection of the *Drinkard* standard).

Finally, AEDPA requires us to presume state court findings of fact to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## A

The district court found that the AEDPA standards of review "largely did not apply" because it "held an evidentiary hearing in order to consider evidence improperly excluded from consideration by the state habeas court." *See Valdez*, 93 F. Supp. 2d at 777. The district court applied a presumption of correctness only to the specific findings of fact made by the state habeas court, namely: it is common for Hispanic males in the Corpus Christi, Nueces County, Texas area to drop out of school; the fact that Valdez "dropped out of school did not put [trial counsel] on notice of any potential mental problem"; and trial counsel's "failure to request the entire court jacket for the Hockley County charge did not fall below standard of conduct for defense attorneys." *Id.* at 778 n.20. It declined to review the state habeas court's conclusions of mixed law and fact under § 2254(d)(1)'s unreasonable application prong. Additionally, it did not apply § 2254(e)(1)'s presumption of correctness to those findings of fact implicit in the habeas court's mixed law and fact conclusions.[11] Thus, the district court selectively applied the presumption of correctness, and did not apply § 2254(d)'s standards.[12]

---

[11]     The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *See, e.g.*, *Marshall v. Lonberger*, 495 U.S. 422, 433, 103 S. Ct. 843, 850 74 L. Ed. 2d 646 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim); *LaVallee v. Delle Rose*, 410 U.S. 690, 695, 93 S. Ct. 1203, 1206, 35 L. Ed. 2d 637 (1973) (same); *see also Goodwin v. Johnson*, 132 F.3d 162, 183-84 (5th Cir. 1998) (findings of fact can be implied from explicit conclusions of law).

[12]     The district court in its decision appears to have treated both the habeas court's findings of historical fact and its conclusions of mixed law and fact as falling under (e)(1)'s

The Director asserts that while the district court had the discretion to hold an evidentiary hearing, the district court's finding of the denial of a full and fair hearing and holding of a plenary hearing does not permit the district court to avoid the application of deference to the state court's adjudication on the merits.[13]  In response, Valdez contends that a determination that a petitioner has received a full and fair hearing before the state court is a prerequisite to a finding that the state court reached an adjudication on the merits, and, thus, a prerequisite to the application of § 2254(d)'s deference as well as the presumption of correctness under § 2254(e)(1).  We disagree with Valdez's contention and conclude that a full and fair hearing is not a prerequisite to the application of AEDPA's deferential framework.

Prior to the AEDPA amendments, § 2254(d) provided in relevant part:

> a determination . . . made by a State court . . . evidenced by a written finding . . . or other reliable and written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit —
> > (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing; . . .
> > (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding.

presumption of correctness.  Despite this appearance, we assume that this is not what the district court meant, as the presumption of correctness applies only to findings of historical fact.  *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct").  Instead, a state habeas court's conclusions of law and mixed law and fact are examined under § 2254(d)(1).  *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

[13]        In her opening brief, the Director asserted that § 2254 barred the district court from holding an evidentiary hearing.  Subsequent to the filing of that brief, the Supreme Court issued its decision in *Michael Williams*, 529 U.S. 420, 120 S. Ct. 1479 (2000) (holding that § 2254 (e)(2) operated only to bar a district court from granting an evidentiary hearing where a petitioner, through his own fault, failed to develop a claim before the state court and met neither of the exceptions).  In light of this decision, the Director has abandoned this position in her reply brief.  Instead, she pursues the argument that even with the discretion to grant an evidentiary hearing, the district court could not cast aside the deference to be accorded state court determinations of law and fact.

28 U.S.C. § 2254(d) (1994) (repealed 1996). Once a petitioner established one of the situations set forth under § 2254(d)(1)-(7), such as the denial of a full and fair hearing, the presumption no longer operated[14]; instead, the district court reviewed the claim de novo and reached its own independent factual determinations. *See* 28 U.S.C. § 2254(d) (1994) (repealed 1996) (providing where one of the situations in (d)(1)-(7) was not shown "the burden shall rest upon the applicant to establish by clear and convincing evidence that the factual determination by the State court was erroneous"); *Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996) ("'[A] federal court is to accord a presumption of correctness to findings of state court proceedings unless particular statutory exceptions to § 2254(d) are implicated.'" (quoting *Williams v. Collins*, 16 F.3d 626, 631 (5th Cir. 1994))). Thus, this pre-AEDPA presumption "merely erect[ed] a starting place or presumption, that [was to] be examined in light of the state court record." *Moore v. Johnson*, 194 F.3d 586, 603 (5th Cir. 1999).

Apart from simply establishing a starting place, the pre-AEDPA presumption of correctness was of limited application and it was § 2254's only source of deference to state court adjudications. The presumption applied only to findings of fact. *See Crane v. Johnson*, 178 F.3d 309, 311 (5th Cir. 1999); *Mason v. Balcom*, 531 F.3d 717, 722 (5th Cir. 1976). It did not apply to mixed questions of law and fact nor did it apply to pure questions of law. *See Thompson v. Keohane*, 516 U.S. 99, 111-12, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995) (holding that questions with a "uniquely legal

---

[14]     The dissent argues that former § 2254(d) did not apply altogether where the petitioner was denied a full and fair hearing in state court. *See* Dissenting Op. at 8 (arguing that under the "prevailing view," § 2254(d) did not apply where a full and fair hearing was denied, and a federal evidentiary hearing would have been required under *Townsend*). We disagree with this reading of § 2254(d). To begin, nothing in the statute suggest ed that its application was limited in this way. Moreover, the dissent's reading of § 2254(d) would render superfluous § 2254(d)(2) and (6), which both required a full and fair hearing before the presumption of correctness would apply.

dimension" were outside § 2254(d)'s presumption of correctness).  Under the now repealed version

of § 2254, we reviewed such questions de novo, granting no deference to state court adjudications.

*See, e.g.*, *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir. 1998) (reviewing questions of law de novo);

*Lee*, 499 F.2d at 461 (finding that the district court "was under no constraint to defer to the state

[court's] conclusions" as to mixed questions of law and fact).

In 1996, Congress enacted AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (1996), amending

§ 2254.  These amendments jettisoned all references to a "full and fair hearing" from the presumption

of correctness accorded state court findings of fact, along with the other situations which previously

swept aside the presumption.  The presumption of correctness erected in its place at § 2254(e)(1),

now simply provides that unless the petitioner can rebut the findings of fact through clear and

convincing evidence, those findings of fact are presumed to be correct.[15]  To reintroduce a full and

fair hearing requirement that would displace the application of § 2254(e)(1)'s presumption would

have the untenable result of rendering the amendments enacted by Congress a nullity.  *See, e.g.*, *Am.*

*Nat'l Red Cross v. S.G.*, 505 U.S. 247, 263, 112 S. Ct. 2465, 2475, 120 L. Ed. 2d 201 (1992) (a

"change in statutory language is to be read, if possible, to have some effect").

Furthermore, as discussed above, AEDPA put into place a deferential scheme, under which

---

[15]     Section 2254(e)(1) replaced the eight specific exceptions to the presumption of correctness with one standard:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court proceedings, a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

we must defer to a state court adjudication on the merits. *See* 28 U.S.C. § 2254(d).[16] In the prefatory paragraph to (d)(1) and (d)(2), the statute provides that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings." The word "shall" is mandatory in meaning. *See, e.g.*, *In re Armstrong*, 206 F.3d 465, 470 (5th Cir. 2000); *City of Dallas, Tex. v. FCC*, 165 F.3d 341, 358 (5th Cir. 1999). Thus, we lack discretion as to the operation of this section. *See Lopez v. Davis*, 531 U.S. 230, 240-41, 121 S. Ct. 714, 722, 148 L. Ed. 2d 635 (2001); *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 772-77, 104 S. Ct. 2105, 2110-2113, 80 L. Ed. 2d 753 (1984). The use of "any" makes clear that this section applies to all cases adjudicated on their merits in state court. The term "adjudication on the merits," like its predecessor "resolution on the merits," refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons. *See Neal v. Puckett*, 239 F.3d 683, 686-87 (5th Cir. 2001); *Mercadel*, 179 F.3d at 274 (5th Cir. 1999). It does not speak to the quality of the process. *See Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997) (rejecting pre-AEDPA contention that "the resolution on the merits prerequisite is a proxy for the quality of the legal process resolving a

---

[16]    28 U.S.C. § 2254(d) provides in full:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>     (2) resulted n a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

dispute"); *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000) (applying *Green* to "adjudication on the merits"). This mandatory and all-encompassing language combined with the meaning of "adjudication on the merits" leaves no room for judicial imposition of a full and fair hearing prerequisite.

Moreover, casting aside AEDPA's standards of review in the fashion urged by Valdez has another untenable result. Valdez asks us to inject a full and fair hearing as a prerequisite to the new deferential scheme applied to conclusions of law and mixed law and fact, which Congress put in place of our de novo review. In asking us to read the statute in this manner, Valdez would have us ignore the fact that Congress has excised this prerequisite from § 2254's presumption of correctness, and apply it to a deferential scheme which did not exist prior to AEDPA. The plain meaning of the text simply will not bear such a reading. Therefore, we hold that a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review.[17]

_____

[17] The dissent would have us depart from the plain language of the statute out of concern that the new AEDPA framework may abandon some of the procedural safeguards required by the former § 2254(d). *See* Dissenting Op. at 11. We cannot, however, second guess the intent of Congress in this manner. Moreover, AEDPA continues to provide protection in cases where the state court's process is in question. For example, as noted below, where a district court elects to hold an evidentiary hearing in light of a state habeas court's failure to allow an applicant to develop the factual basis of his claim, the hearing may assist the district court in ascertaining whether the state court reached a reasonable determination under § 2254(d)(1)&(2).

The dissent also contends that too literal of a reading of AEDPA's provisions is inconsistent with our prior case law interpreting § 2254(e)(2). Specifically, the dissent reads our construction of AEDPA's provisions to necessitate a finding that § 2254(e)(2) alone governs a district court's discretion in deciding whether to conduct an evidentiary hearing. The dissent argues that this is contrary to Fifth Circuit precedent, which has found pre-AEDPA case law instructive when reviewing a district court's refusal of a federal evidentiary hearing. *See* Dissenting Op. at 12. Our construction of AEDPA's provisions here, however, is not inconsistent with those cases. The cases cited by the dissent involved situations where § 2254(e)(2) did not apply because a prerequisite to that provision

-16-

In response, Valdez attempts to undercut this statutory interpretation with three contentions. First, Valdez contends that this reading of the statute renders an evidentiary hearing in cases like his a useless exercise. Second, Valdez asserts that this holding overrules our Circuit's precedent. Third, he urges us to adopt the approach taken by the Tenth Circuit.

First, Valdez asserts that our view of the statute renders impotent an evidentiary hearing held where the petitioner received an adjudication on the merits after a state hearing that was less than full and fair. We disagree. Where a district court elects, in instances not barred by § 2254(e)(2), to hold an evidentiary hearing, the hearing may assist the district court in ascertaining whether the state court

---

was not satisfied. In such cases, the district court's discretion to hold a hearing was not limited by § 2254(e)(2). *See* § 2254(e)(2) ("*If* the applicant has failed to develop the factual basis of a claim in State court proceedings . . . ." (emphasis added)); *Michael Williams*, 529 U.S. at 437 (construing conditional language to mean that § 2254(e)(2) does not prohibit a federal evidentiary hearing where the failure to develop the factual basis was attributable to no fault of the petitioner); *Clark*, 202 F.3d at 765 ("[Section 2254(e)(2)] appl[ies] only where the failure to develop the factual basis is directly attributable to a decision or omission of the petitioner.").

Finally, the dissent suggests that a full and fair hearing prerequisite to AEDPA deference can be interpreted from the statute by reading § 2254(d)(2) and § 2254(e)(1) *in pari materia*: "[where a state habeas court denies a petitioner a full and fair hearing,] it seems disingenuous to conclude that the state court rendered a decision that was based on a reasonable 'determination of the facts in light of the *evidence presented*,' and is therefore entitled deference." Dissenting Op. at 14-15. We disagree with the dissent's argument on this point for two reasons. First, Congress's omission of language of a full and fair hearing is clear. Second, there is an easier way to harmonize § 2254(d)(2) and § 2254(e)(1). Whereas § 2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues. For example, a district court may find by clear and convincing evidence that the state court erred with respect to a particular finding of fact, thus rebutting the presumption of correctness with respect to that fact. *See* § 2254(e)(1). It is then a separate question whether the state court's *determination* of facts was unreasonable in light of the evidence presented in the state court proceeding. *See* § 2254(d)(2). Thus, it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2).

-17-

reached an unreasonable determination under either § 2254(d)(1) or (d)(2). An evidentiary hearing is not an exercise in futility just because §§ 2254(d) and (e)(1) require deference.

Second, Valdez maintains that we have elsewhere held that a full and fair hearing is a prerequisite to a determination that a state court has adjudicated a habeas applicant's petition on the merits. In support of this contention, Valdez directs us to *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000); *Singleton v. Johnson*, 178 F.3d 381 (5th Cir. 1999); and *Hughes v. Johnson*, 191 F.3d 607 (5th Cir. 1999). Valdez is correct that we stated in *Morris* that a full and fair adjudication of a petitioner's claims in state court is a prerequisite for the application of AEDPA's standards of review. *See* 186 F.3d at 584. Additionally, we used similar language in *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998) ("In this Circuit, provided the state court conducted a full and fair adjudication of the petitioner's claims, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1).").

To the extent that these references to a "full and fair" adjudication refer to a full and fair state court hearing, they were dicta. Neither in *Morris* nor in *Corwin* were we confronted with a claim that the petitioner had been denied a full and fair hearing. *See Morris*, 186 F.3d at 584 ("In this appeal, [the petitioner] argues that the state court's unreasonable instruction led to his conviction under a standard contrary to settled federal law"); *Corwin*, 150 F.3d at 472 ("Corwin argues that . . . all state court determinations of federal constitutional issues in habeas proceedings should be subject to de novo review by the federal courts"). In *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997), on which *Morris* relies for the "full and fair adjudication" proposition, we evinced concern that the state court had not adequately adjudicated the petitioner's claim. While we stated our concern, we resolved the petitioner's claim on other grounds and did not delve further into the possible import of the way in

which the state habeas court adjudicated the petitioner's claim.[18]

Apart from being dicta, these references also appear to conflate the adjudication on the merits requirement with a full and fair hearing requirement, referring to the adjudication on the merits as a "full and fair adjudication on the merits." *Morris*, 186 F.3d at 584; *Corwin*, 150 F.3d at 472. Where we have conducted an examination of whether an "adjudication on the merits" occurred, we have looked at whether the state court reached the merits of the petitioner's claim rather than deciding it on procedural grounds. *See Murphy*, 205 F.3d at 813 (finding that there was an adjudication on the merits because the state court reached the merits of the petitioner's claim); *Fisher*, 169 F.3d at 300 (concluding a state court's denial of relief on waiver grounds constituted a procedural, rather than a substantive, resolution of the case, and as such was not an adjudication on the merits). In short, we find that *Morris* and *Corwin* give us no guidance as to whether a full and fair hearing is a precondition to the operation of the AEDPA standards of review.

Furthermore, Valdez's reliance on *Hughes* is misplaced. In *Hughes*, we did not address the applicability of the AEDPA standards where a full and fair hearing had been denied. Instead, we addressed solely the question of whether *Hughes* was entitled to an evidentiary hearing. *See* 191 F.3d at 630. Thus, *Hughes* offers Valdez no support.

Valdez's reliance on *Singleton* is likewise misplaced. In *Singleton*, the trial court granted the petitioner habeas relief in part and, in so doing, issued findings of fact. The Texas Court of Criminal Appeals reversed and denied Singleton relief without issuing an opinion. *See* 178 F.3d at 384.

---

[18]     The dissent also notes that a recent Supreme Court opinion similarly used language of a "full and fair adjudication." *Michael Williams*, 529 U.S. at 437. *Michael Williams*, however, like *Morris* and *Corwin*, is inapposite in this case. In *Michael Williams*, the Court addressed the applicability of the § 2254(e)(2) bar to an evidentiary hearing, and not the applicability of AEDPA deference.

Concluding that there were no findings of fact to which the presumption of correctness could attach, we remanded the case to the district court for a de novo evidentiary hearing. *See id.* at 385. While we found that Singleton was entitled to a "full and fair evidentiary hearing," we did not pass upon the question as to whether the absence of such a hearing precluded the operation of § 2254(d). *Id.* More importantly, we rejected Singleton's assertion that in the absence of any factual findings, the Texas Court of Criminal Appeals had not reached an adjudication on the merits, rendering § 2254(d) inoperative. *See id.* at 384. In doing so, we implied that § 2254(d) applied to such a summary disposition, even where the petitioner was entitled to an evidentiary hearing. Therefore, as with *Morris* and *Hughes*, we find that *Singleton* offers Valdez no support.

Third, Valdez urges us to adopt the approach of the Tenth Circuit. In *Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998), the state habeas court denied the petitioner relief on the merits of his claim without an evidentiary hearing. *See id.* at 1253. Our sister circuit found that in the absence of a state hearing the petitioner was entitled to a federal evidentiary hearing. *See id.* More importantly, the Tenth Circuit concluded that the district court should not afford AEDPA's deference to the state court's mixed law and fact conclusions. *See id.* at 1254. For this conclusion, the court rested solely on *Nguyen v. Reynolds*, 131 F.3d 1340, 1359 (10th Cir. 1997). *See Miller*, 161 F.3d at 1253. The *Nguyen* court, however, did not apply AEDPA to the petitioner's claims because he had filed before the Act's effective date, rendering AEDPA's standards inapplicable. *See Nguyen*, 131 F.3d at 1345. Thus, in reaching its conclusion, the Tenth Circuit did not ground its decision on a reading of the statute, but in reliance on a case applying pre-AEDPA § 2254. Because of the rather tenuous footing of the Tenth Circuit's decision, we decline to adopt its approach.

Instead, our interpretation is in step with the Fourth Circuit's view of AEDPA deference. In

an en banc decision, the Fourth Circuit recently rejected its prior decision in *Cardwell v. Greene*, 152

F.3d 331 (1998), which had adopted an approach akin to *Miller*. *See Bell v. Jarvis*, 236 F.3d 149,

158-160 (2000). In *Cardwell*, like *Miller*, the state court summarily denied the petitioner's request

for relief without an evidentiary hearing. *See Cardwell*, 152 F.3d at 335. The Fourth Circuit found

that the failure to develop the claim occurred through no fault of the petitioner, and, thus, §

2254(e)(2) did not bar an evidentiary hearing. *See id.* at 337. While the summary disposition

qualified as an adjudication on the merits, see *id.* at 339, the court concluded that the absence of an

articulated rationale rendered the difference "between de novo review and 'reasonableness' review

[] insignificant." *Id.* at 339, (quoting *Cardwell v. Greene*, 971 F.Supp. 997, 1015 (E.D. Va. 1997)).

The Fourth Circuit rejected *Cardwell*'s treatment of AEDPA's standards of review "to the extent that

*Cardwell* requires federal habeas courts to conduct a de novo or effectively de novo review of a

summary state court decision, or to grant habeas relief based upon an independent determination that

the state court has violated the constitutional rights of the petitioner." *Bell*, 236 F.3d at 160. In

reaching this conclusion, the Fourth Circuit relied on the Supreme Court's recent elucidation of the

AEDPA standards in *Terry Williams*. The court concluded that, in *Terry Williams*, "the Supreme

Court has made it clear that de novo, independent, or plenary review of state court adjudications is

no longer appropriate, that there are indeed important distinctions between the 'reasonableness'

review called for by the AEDPA and the de novo review." *Bell*, 236 F.3d at 160.[19]

---

[19]     The dissent questions our present reliance on *Bell* on the ground that it's reasoning is contrary to the direction given by the Supreme Court in three recent cases to courts applying AEDPA. Specifically, the dissent states that the *Bell* court departed from the requirement stated in *Weeks v. Angelone*, 528 U.S. 225 (2000), *Terry Williams v. Taylor*, 529 U.S. 362 (2000), and *Ramdass v. Angelone*, 530 U.S. 156 (2000), that federal courts "adjudicate habeas corpus claims by first performing the court's traditional function of analyzing the merits of the federal constitutional claim and only then assessing whether § 2254(d)(1)'s new defense to relief precludes the granting of

Admittedly, the focus of the *Bell* court was the summary nature of the state court's disposition, not that the state court denied Bell an evidentiary hearing.   Nevertheless, the absence of a hearing is precisely a situation under our pre-AEDPA law where we would have found that the state court denied t he petitioner a full and fair hearing, potentially making a federal evidentiary hearing mandatory. *See, e.g.*, *Austin v. McKaskle*, 724 F.2d 1153, 1156 (5th Cir. 1984) (finding the denial of a full and fair hearing where no state evidentiary hearing was held).   Likewise, the Fourth Circuit, pre-AEDPA would have found this to be the denial of a full and fair hearing. *See, e.g.*, *Bacon v. Lee*, 225 F.3d 470, 489-90 (4th Cir. 2000) (applying pre-AEDPA law and finding that in the absence of hearing, the petitioner had not received a full and fair hearing).   In spite of what pre-AEDPA would have been the denial of a full and fair hearing, the Fourth Circuit found that the AEDPA standards applied, implying that there is no full and fair hearing requirement under AEDPA. Moreover, the Fourth Circuit's reasoning is sweeping, finding that AEDPA standards of review apply whenever there has been an adjudication on the merits.

In sum, we conclude the district court erred in determining that, where there had been a denial of a full and fair hearing, AEDPA's deferential framework, as set out in § 2254(d) and (e), did not apply to a state court's adjudication on the merits.

**B**

Valdez contends the AEDPA standards of review still should not apply because the state did

---

the writ in a case in which a court has found a constitutional violation."  Dissenting Opinion at 21. Because we do not read the above Supreme Court cases to require the two-step inquiry suggested by the dissent, we continue to find the reasoning in *Bell* instructive.

not produce the missing exhibits in accordance with § 2254(f).[20] In making this argument, Valdez does not assert that the absence of any particular exhibit rendered impossible the district court's review of the state habeas court's determination of a specific factual issue; instead, Valdez's contention is a blanket one that the AEDPA standards of review should not operate because the State could not produce the exhibits.[21] We find Valdez's § 2254(f) argument unavailing.

First, in reviewing a claim under this section, we look to whether this inability to produce the exhibits resulted from some "deleterious or improper conduct." *Baker v. Estelle*, 711 F.2d 44, 46 (5th Cir. 1983) (rejecting petitioner's argument that his sufficiency of the evidence claim should be resolved in his favor because the state was unable to produce a trial transcript where there had been no "deleterious or improper conduct" by the state).[22] The absence or loss of the pertinent portions

---

[20]     28 U.S.C. § 2254(f) provides:

> If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the record, then the existing facts and circumstances what weight shall be given to the State court's factual determination.

[21]     We note that it is not clear that § 2254(f) impacts the § 2254(d) standards of review. On its face, the section appears to apply only to the presumption of correctness to be accorded state court factual findings. We decline to determine § 2254(f)'s applicability to these standards because it is unnecessary to our assessment of Valdez's § 2554(f) argument.

[22]     Although *Baker* is pre-AEDPA, the AEDPA amendments made no alteration to this section. Instead, AEDPA merely redesignated the section from § 2254(e) to § 2254(f), its present location in the code. *See* AEDPA, Pub. L. 104-132 § 104(2). Thus, our pre-AEDPA cases concerning this section remain applicable.

-23-

of the record alone is insufficient to support a finding of a deleterious or improper conduct. *See id*.

Valdez has not alleged that the state court's loss of the exhibits during the six year period between

the evidentiary hearing and the close of that hearing upon the motion of the parties occurred because

of the state court's misconduct. Nor does the record disclose any such misconduct. In discussing

the misplacement of the exhibits, this exchange occurred:

> THE COURT: Okay. I have gone through the four files and I did not find the exhibits. If I can't find them, you have copies.
>
> MR. LEVINGER: We can resubmit.
>
> THE COURT: I am going to have somebody look into, see if we have the actual exhibits. There was another court reporter that I had. I don't know if she placed them somewhere else, but if I don't find them, I am going to ask you to submit copies, if you will.

State Habeas Hr'g on Proposed Findings at 148-49. Given the six-year delay between the evidentiary

hearing and the hearing on proposed findings in this case, and the absence of any assertion of

misconduct, we cannot say that the failure to locate the exhibits was an "egregious breach of [the

court's] duty." *Walker v. Maggio*, 738 F.2d 714, 717 (finding that the state's inability to locate the

transcript after eight years was not "an egregious breach of duty" and applying the presumption of

correctness).

Second, where there is another means of adducing the requisite information for the purposes

of the district court's review, the standards remain applicable. *See id.* at 716 (holding that the

presumption of correctness still applied where the state court had held an evidentiary hearing as a

means of reproducing the evidence and record produced from this hearing allowed the habeas court

to review the claim); *Pruitt v. Hutto*, 574 F.2d 956, 957 (8th Cir. 1978) (holding that while the state

record was ordinarily indispensable to federal review, the state was not required to do the impossible

and produce the transcript, where the district court had adequate information before it to assess the

-24-

petitioner's claim); *see also Rideau v. Whitley*, 237 F.3d 472, 482-83 (5th Cir. 2000) (finding that the state could not establish prejudice warranting dismissal of habeas claim where exhibits were lost because oral testimony in the state hearing adequately described the exhibits for the purposes of federal review). Our inquiry, therefore, focuses on whether the federal district court had the necessary materials with which to review the state court proceedings.

The district court had before it the following exhibits: (1) the Corpus Christi School records; (2) the affidavit of Dr. Cohorn and the Big Spring Hospital Psychiatric Evaluation; (3) the Hockley County conviction packet and underlying pleadings; (4) the Big Spring Hospital Psychiatric Evaluation proved up by the records keeper; (5) Lewis's fee application; (6) Gutierrez's fee application; (7) Dr. Price's curriculum vitae; (8) the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, February 1989. Thus, the district court had before it what were exhibits 1-4, 6-7, and 13-14 in the state habeas proceeding.[23] These

[23] The exhibits entered into evidence during the course of the state habeas hearing are as follows: (1) certified copies of the school records, see State Habeas Tr. 1:16; (2) certified copies of pleadings from the prior conviction at Hockley County, see State Habeas Tr. 1:16; (3) verified copies of a psychiatric and psychological evaluation performed on Valdez in 1974 at age 18, see State Habeas Tr: 1:16; (4) same documents as exhibit 3 but proven up by the psychologist who performed the test, whereas exhibit 3 was proven up by the records custodian, see State Habeas Tr. 1:16; (5) records of the Nueces County jail from Valdez's stay, including his request slips to use the library, see State Habeas Tr: 1:16 and State Habeas Tr. 2:392; (6) Carl Lewis's fee application, see State Habeas Tr. 1:56; (7) David Gutierrez's fee application, see State Habeas Tr. 1:63; (8) Letter from Alberto Valdez to Shirley Lopez, dated April 14, 1985, see State Habeas Tr 1:150-151, 152 (Valdez begins the letter "my dearest sweetheart" and wrote "I miss you and I love you" on the envelope); (9) Letter from Alberto Valdez to Shirley Lopez, see State Habeas Tr. 1:151, State Habeas Tr. 1:152 (wishing her a happy Mother's day and closing with "With love, hugs, and kisses for you sweetheart"); (10) Handkerchief made and sent by Valdez to Shirley and her daughter Monica, see State Habeas Tr. 1:151, 153-154; (11) 1985 Easter card to Monica Lopez, see State Habeas Tr. 1:164-65 (card says "Happy Easter, Sweetheart. I love you. Your Uncal [sic] Albert"); (12) handkerchief with panda bear on made by Valdez and sent to his niece Monica, see State Habeas Tr. 1:165-66 (he wrote on it "I love you Monica"); (13) American Bar Association Guidelines for the Appointment and Profession of Counsel in Capital Murder cases, see State Habeas Tr. 1:183; (14)

exhibits form the basis for Valdez's central contention—that he is mildly mentally retarded and that had his counsel performed some investigation they would have learned about his limited intellect—placing before the district court those exhibits essential to its review of the state court's decision.

The exhibits that the federal district court lacked were: (1) the letters written and sent by Valdez to family members while he was incarcerated, exhibits 8, 9, and 11 at the state habeas hearing; (2) handkerchiefs with artwork added by Valdez and which he sent to his family members, while he was incarcerated, exhibits 10 and 12 at the state habeas hearing; (3) the records from the Nueces County Jail from Valdez's incarceration there during his trial, including his request slips to use the library, exhibit 5 at the state habeas hearing. *See supra* note 23. While the federal district court was without these exhibits, the state habeas record below contained sufficient descriptions of the remaining missing exhibits to inform the district court of their probative value. *See supra* note 23. Finding neither misconduct by the state court nor that the district court lacked the necessary evidence with which to reach a disposition of Valdez's claims, we conclude that the state's inability to produce the missing exhibits did not permit the district court to review Valdez's claims de novo.

**C**

Because we find that the district court erred in its failure to apply § 2254's deferential framework, we decline to address the merits of Valdez's claims for habeas relief. Instead, we vacate

curriculum vitae of Dr. Randall Price, see State Habeas Tr. 2:236; (15) Article from the Texas Poll Report summarizing the stories which were released from the 1988 Texas Poll, see State Habeas Tr. 2:342, 344 (discussing that, according to the poll, 73 percent of Texans surveyed were against the application of the death penalty to the mentally retarded); (16) State Habeas petition of Valdez, State Habeas Tr. 2:383; (17) photocopies of the psychiatric evaluation conducted at the Big Spring State Hospital and school evaluation; (18) penitentiary packs, see State Habeas Tr. 2:384.

the district court's grant of the writ of habeas corpus and remand to the district court for assessment of Valdez's claims under standards set forth above. Furthermore, because we vacate the grant of the writ, we need not reach the Director's contentions regarding the proper scope of the writ.

**III**

Finally, the Director contends that the district court abused its discretion by limiting the Director's introduction of evidence to that which the State presented in the state habeas proceeding. Specifically, the Director points to the exclusion of: (1) a 1972 report by Deborah Mayer detailing Valdez's "extensive and violent juvenile history"; (2) an affidavit by Dr. Cohorn; (3) intelligence test scores from Valdez's 1974 incarceration in the Texas Youth Commission; (4) results of a 1986 mental status examination by Dr. Otero; (5) evidence that Valdez passed an eighth grade equivalency test in 1986; and (6) a 1986 GED test report showing that Valdez passed four out of the test's five sections.

We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Merida*, 765 F.2d 1205, 1215 (5th Cir. 1985). "'A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence.'" *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) (quoting *S. Pacific Trans. Co. v. Chabert*, 973 F.2d 441, 448 (5th Cir. 1992)). An erroneous evidentiary ruling merits the reversal of judgment only "'where the challenged ruling affects a substantial right of a party.'" *Id*. (quoting *Johnson v. Ford Motor Co.*, 988 F.2d 573, 578 (5th Cir. 1993)); *see Caprotta v. Entergy Corp.*, 168 F.3d 754, 755-56 (5th Cir. 1999).

First, the district court excluded the report of Deborah Mayer, a probation counselor, because the Director did not show that it was available in 1988 or in 1990 at the state habeas hearing. Moreover, the district court found that the report contained hearsay. We find that the district court

properly excluded the report as it was rife with hearsay. *See* Fed. R. Evid. 802. Nor did the district court err in precluding the Director from using the report as a prior inconsistent statement as the report did not attribute the statements to any specific individuals. Additionally, contrary to the Director's contention that he was not allowed to question witnesses regarding the report, the district court allowed the Director to question witnesses regarding their awareness of the document. The district court merely precluded the Director from reading aloud hearsay statements contained within the report and asking if the statements surprised the witness.

Second, the district court excluded the affidavit of Dr. Cohorn because it contradicted the live testimony of Dr. Randall Price offered at the hearing. The district court concluded that an affidavit was an inappropriate vehicle for adducing controverted evidence, and exercised its discretion under 28 U.S.C. § 2246 to exclude the affidavit.[24] The district court also noted the availability of Dr. Cohorn as a live witness. The Director asserts that it sought to use this affidavit to clarify Dr. Cohorn's prior affidavit, which was introduced into evidence at both the state habeas hearing and the federal evidentiary hearing. The Director maintains that this prior affidavit resulted in the mistaken implication that Valdez was diagnosed as mildly retarded in competence testing by Dr. Cohorn.

On an application for a writ of habeas corpus, the district court has the discretion to receive evidence via affidavits. *See* 28 U.S.C. § 2246; *Loper v. Ellis*, 263 F.2d 211, 212 (5th Cir. 1959). The introduction of affidavits into evidence is "subject to the right of the opponent to cross-examine

---

[24]   28 U.S.C. § 2246 provides:

> On application for a writ of habeas corpus, evidence may be taken orally or by depositions, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits.

the affiants by written interrogatories." *Loper*, 263 F.2d at 212. The Director attempted to introduce this new affidavit at the federal hearing without affording Valdez time to propound interrogatories in response. The Director did so when Dr. Cohorn was available to testify as a live witness. The district court instructed the Director that it would accept Dr. Cohorn's live testimony, but the Director declined to present him at the hearing. In light of Dr. Cohorn's availability and the lack of notice given to Valdez, the district court did not abuse its discretion in refusing to admit Dr. Cohorn's affidavit.

The district court found that the State's failure to produce or offer into evidence the remaining pieces of evidence noted above at trial or at the state habeas hearing established a presumption that the documents would not have been available at trial. The district court excluded these four exhibits as irrelevant because the Director failed to offer evidence to rebut that presumption. We find that the district court abused its discretion in doing so.

Evidence is relevant so long as it tends to "make the existence of any fact that is of consequence to the determination of an action more probable that it would be without the evidence." Fed. R. Evid. 401. The results of the Wechsler Adult Intelligence Scale test administered while Valdez was incarcerated with the Texas Youth Commission show that he had a verbal I.Q. of 76, a performance I.Q. of 90, and a full scale I.Q. of 81, which are scores above the classification of mental retardation. During that same period of incarceration, Dr. Rafael Otero examined Valdez and concluded that Valdez was not mentally deficient. In 1986, Valdez passed an eighth grade equivalency test and four out of five sections of the GED. These results also tend to undercut Valdez's assertion that he is mentally retarded. Thus, these test results and the report by Dr. Otero tend to contravene Valdez's contention that he is mentally retarded, which bears on whether his trial

-29-

counsel's performance prejudiced him.

Assuming *arguendo* that the relevance of these four records is contingent on establishing that they were available at trial, the presumption on which the district court based its ruling fails. The district court assumed that had the records been available to the State, the State would have presented the records at the state habeas hearing. Based on this assumption, the district court concluded that the records were not available at the time of trial, absent a showing to the contrary by the Director. While this inference is not illogical, it is nevertheless belied by the fact that these four documents existed prior to Valdez's trial and habeas hearing. The Director authenticated these records via offers of affidavits by the records custodians, which substantiates their dates of creation. Therefore, the district court abused its discretion in excluding the Texas Youth Commission Intelligence Test, Dr. Otero's report, the eighth grade equivalency exam, and Valdez's results on the GED. The exclusion of this evidence undermined the Director's ability to contest Valdez's contention that he was prejudiced by his counsel's performance. Thus, we find that the exclusion of these records affected the Director's substantial rights because we cannot "be certain . . . that the error had a slight effect" on the disposition of the case. *Tanner v. Westbrook*, 174 F.3d 542, 549 (5th Cir. 1999). On remand, the district court must admit these records and consider them in reaching its disposition of Valdez's claims.

## IV

In sum, we hold that a full and fair hearing is not a prerequisite to the application of 28 U.S.C. § 2254's deferential scheme. Therefore, we VACATE and REMAND to the district court for an assessment of Valdez's claims applying the standards set forth in § 2254(d) and (e)(1). With respect to the district court's evidentiary rulings, we AFFIRM in part and VACATE in part.

-30-

JAMES L. DENNIS, Circuit Judge, dissenting:

Director Cockrell asserts that the plenary hearing held by the district court in response to its finding that the state habeas court denied Valdez a full and fair hearing did not excuse the application of AEDPA "deference" to the state court's adjudication on the merits. Under this view, which the majority opinion embraces, the absence of a full and fair hearing in state court would entitle a petitioner to an evidentiary hearing before the federal district court, but the district court would nevertheless be required, pursuant to the AEDPA, to extend deference to the suspect determinations of the state court. In his brief, Valdez responds as follows:

> [I]t would make little sense to require a federal district court to conduct its own evidentiary hearing because of material deficiencies in the state court proceeding, yet at the same time require the district court to disregard the fully developed evidence presented in its own court and instead defer to the decision of the state court made on an incomplete record. . . .

The simple and compelling logic underlying this response finds ample support in Fifth Circuit and Supreme Court precedent, as well as in the writings of leading habeas corpus scholars. Therefore, I respectfully dissent.

I.      **The State Court Denied Valdez a Full and Fair Hearing**

Concluding that he had not received a full and fair hearing at the state habeas level, the federal

-31-

district court granted Valdez an evidentiary hearing on his ineffective assistance of counsel claim. The district court based its conclusion on both (1) a finding that the state habeas court lost, and therefore did not consider, certain exhibits admitted into evidence during the hearing,[25] and (2) the state habeas court's failure to read the trial transcript. One need only examine the latter ground to determine that the state court did indeed deny Valdez a full and fair hearing.

In *Dobbs v. Zant*,[26] the Supreme Court emphasized the importance of "reviewing capital sentences on a complete record."[27] Accordingly, this court has recognized that meaningful federal habeas review requires a trial transcript,[28] and familiarity with the trial and sentencing proceedings is no less indispensable to the state habeas court in reaching its resolution on the merits. In the present case, the state habeas judge did not preside over Valdez's criminal trial. Consequently, he lacked the advantage of a personal recollection of the trial proceedings.[29] Nevertheless, at a hearing on Valdez's petition, the state habeas judge stated: "I have never read the record of the trial and I

---

[25]     *See* Maj. Op. at 5.

[26]     506 U.S. 357 (1993).

[27]     *Id.* at 358.

[28]     *See, e.g., Magouirk v. Phillips*, 144 F.3d 348, 363 (5th Cir. 1998) ("We are at a loss to understand how a federal habeas court can conduct a meaningful sufficiency review without a transcript of [the] trial.").

[29]     This court has heavily relied on this advantage when deciding whether "paper hearings" are full and fair. "Paper hearings are hearings where the state judge did not hear live testimony, but instead relied on affidavits." *Perillo v. Johnson*, 79 F.3d 441, 446 n.7 (5th Cir. 1996). *See, e.g., Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000) (finding that paper hearing was full and fair where habeas judge had been the trial judge). *Cf. Perillo*, 79 F.3d at 446-47 (concluding that the state habeas judge's reliance on transcripts and affidavits to resolve ineffective assistance claim presented unacceptable "danger of 'trial by affidavit,'" especially given that the judge did not preside at trial and "could not supplement the affidavits with his own recollection of the trial and [defense counsel's] performance in it").

don't intend to. I don't have the time."[30] Although the Director contends that it was never shown that the judge did not read the record during the period between the hearing and the issuance of the order denying Valdez's habeas petition, the Director offers no evidence that he did. Thus, the district court was reasonable in its conclusion that the state habeas judge did not read the trial transcript.

The Director asserts that even if the state habeas court did not read the trial transcript, this failure did not deny Valdez a full and fair hearing because Valdez's counsel sufficiently informed the court of the trial proceedings by directing the court's attention to relevant portions of the record and quoting it at length in the habeas petition. But discrete references to the record made at various stages of the state habeas proceeding do not provide a complete picture of what took place at trial. In *Flanagan v. Henderson*,[31] we found that a federal district court erred in denying habeas relief without holding an evidentiary hearing where there was no trial transcript to provide the "factual basis" necessary for the resolution of the petitioner's due process and ineffective assistance of counsel claims.[32] The state record contained only "pleadings, minute entries by the State district court clerk, various orders entered by the State trial judge and a series of abbreviated excerpts from the court reporter's notes which relate to the 108 Bills of Exception assigned during pre and post trial proceedings and during the trial itself."[33] Addressing the adequacy of this record, we stated:

It well may be that the entire record transcript of the State trial is still available and

---

[30]     *Valdez v. Johnson*, 93 F. Supp. 2d 769, 776 (S.D. Tex. 1999).

[31]     496 F.2d 1274 (5th Cir. 1974).

[32]     *Id.* at 1277 (citing *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963) ("[A] federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.")).

[33]     *Flanagan*, 496 F.2d at 1276.

-33-

that it alone will afford a fact finding procedure which is adequate to afford a full and fair hearing. However, no such transcript is now a part of the record in this cause and no fair appraisal of the reliability of the resolutions of those fact issues which have been developed by the petition can be made from the bits and pieces of the trial transcript which formed the record examined by the court below. Such a record is inadequate.[34]

If a record tailored from fragments of material generated by the state trial court is insufficient for us to decide an ineffective assistance of counsel claim, it is likewise inadequate for a state habeas court lacking first-hand knowledge of the trial proceedings. The conclusion is therefore inescapable that the state habeas judge's decision not to read the trial transcript denied Valdez a full and fair hearing.

## II.     A Full and Fair Hearing Is a Prerequisite to AEDPA "Deference"

The district court found that the AEDPA standards of review "largely do not apply since this Court has held an evidentiary hearing in order to consider evidence improperly excluded from consideration by the state habeas court."[35] Thus, the district court addressed "the ultimate conclusion regarding ineffective assistance of counsel without the presumption that the state court's conclusion was correct."[36] In support of the court's finding, Valdez asserts that pre-AEDPA law governs the

---

[34]     *Id.* at 1277.

[35]     *Valdez*, 93 F. Supp. 2d at 777.

[36]     *Id.* at 778.

consequences that arise when a federal evidentiary hearing is mandatory because the state court failed to conduct a full and fair hearing. This case therefore requires an understanding of pre-AEDPA law.

### A. Pre-AEDPA Law

In the 1953 case of *Brown v. Allen*,[37] the Supreme Court decided when a federal habeas corpus court is to hold its own hearing on a constitutional claim. Roughly speaking, the Court concluded that if there were "unusual circumstances" or a "vital flaw" in the state court process, a federal hearing was required.[38] But even in the absence of a defect, the district court remained free, in the exercise of its discretion, to take testimony as to the facts.[39]

Because the *Brown* opinion did not define "unusual circumstances" or "vital flaw," and because the lower federal courts were reaching inconsistent results, the Supreme Court sought to clarify matters in the 1963 case of *Townsend v. Sain*.[40] The Court unanimously held that whenever a habeas applicant alleges facts that, if proved, would entitle him to relief, the federal court may "receive evidence and try the facts anew."[41] The Court was likewise unanimous in stating that independent factfinding is *mandatory* "if the habeas applicant did not receive a full and fair evidentiary

---

[37]     344 U.S. 443 (1953).

[38]     *See* 17A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4265 (2d ed. 1988 & Supp. 2001).

[39]     *Id.*

[40]     372 U.S. 293 (1963).

[41]     *Id.* at 312.

hearing in a state court, either at the time of the trial or in a collateral proceeding."[42] A majority of

the Court proceeded to list six circumstances in which a federal evidentiary hearing was mandatory.

These were:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the
>
> state factual determination is not fairly supported by the record as a whole; (3) the
>
> fact-finding procedure employed by the state court was not adequate to afford a full
>
> and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5)
>
> the material facts were not adequately developed at the state-court hearing; or (6) for
>
> any reason it appears that the state trier of fact did not afford the habeas applicant a
>
> full and fair fact hearing.[43]

The Court also repeated in *Townsend* that the district court has the discretion to conduct a hearing

in any case, even when none of the above criteria is met.[44]

In 1966, Congress enacted the former 28 U.S.C. § 2254(d), which provided:

> In any proceeding instituted in a Federal court by an application for a writ of habeas
>
> corpus by a person in custody pursuant to the judgment of a State court, a
>
> determination after a hearing on the merits of a factual issue, made by a State court
>
> of competent jurisdiction in a proceeding to which the applicant for the writ and the

---

[42]     *Id.*

[43]     *Id.* at 313.

[44]     *See id.* at 318.

State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit–

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the

State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record :

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.[45]

---

[45]    28 U.S.C. § 2254(d) (1994) (repealed 1996).

The tests for procedural regularity and substantive accuracy established by former § 2254(d) bore an obvious resemblance to the *Townsend* guidelines. However, as observed by Professor Yackle:

The precise fit between the former § 2254(d) and *Townsend* was never perfectly clear. The prevailing view was that the former § 2254(d) neither displaced nor codified *Townsend*'s holding on the threshold question of whether a court must conduct a hearing. Rather, the former § 2254(d) assumed that a federal hearing was to be held and addressed only the bearing previous state court findings should have in that federal proceeding. The key to that interpretation lay in the text of the former § 2254(d) itself, which provided that the presumption in favor of state findings would apply "in" a federal habeas proceeding and that the applicant could rebut that presumption "in an evidentiary hearing in the federal proceeding" by adducing convincing evidence that the state finding was erroneous.[46]

---

[46] Larry W. Yackle, *Federal Evidentiary Hearings Under the New Habeas Corpus Statute*, 6 B.U. PUB. INT. L.J. 135, 139 (1996). *See Developments in the Law–Federal Habeas Corpus*, 83 HARV. L. REV. 1038, 1122 n.46 (1970):

On its face and in light of the legislative history, the [1966] amendment is not directed at the question whether to hold a federal evidentiary hearing. Instead, it assumes that a hearing is to be held and attempts to decide if the state's factual conclusions are to be deemed presumptively correct at that hearing. Though their purposes are distinguishable, the amendment and *Townsend* do reinforce each other. If the procedure at the state hearing was so inadequate that a *Townsend* hearing is necessary, it would be inconsistent, as the statute recognizes, for the judge at the federal evidentiary hearing to treat the state decision as presumptively correct.

*See also LaVallee v. Delle Rose*, 410 U.S. 690, 701 n.2 (1973) (Marshall, J., dissenting) ("The Court, of course, does not hold that the District Court erred in holding a de novo evidentiary hearing on the voluntariness of respondent's confession. That is a question distinct from the presumption of validity and the special burden of proof established by 28 U.S.C. § 2254(d). Section 2254(d) says nothing concerning when a district judge may hold an evidentiary hearing–as opposed to acting simply on the state court record–in considering a state prisoner's petition for federal habeas corpus. So far as I

Thus, under the "prevailing view," the statute did not come into play if a federal hearing was mandatory under *Townsend*.[47] The parties were simply left in their traditional positions; i.e., the petitioner had to establish a prima facie case for relief, thereby forcing the respondent to come forward with rebutting evidence.[48] However, if *Townsend* did not require an evidentiary hearing, but

---

understand, the question whether such a hearing is appropriate on federal habeas corpus continues to be controlled exclusively by our decision in *Townsend v. Sain* even after the enactment of § 2254(d)."); *Guice v. Fortenberry*, 661 F.2d 496, 501 (5th Cir. 1981) ("*Townsend* was not, however, completely superseded by the [1966] amendment, for the Supreme Court decided when a federal evidentiary hearing is mandatory while the habeas corpus statute, as amended, merely establishes a presumption that the state court judgment is correct unless the applicant establishes one of a number of specific reasons to disregard it.").

[47]     *See Fowler v. Jago*, 683 F.2d 983, 988 (6th Cir. 1982):
Although on its face the statute does not govern when a federal court must hold an independent evidentiary hearing, it does require that state court findings of fact made after a full and fair hearing are entitled to a presumption of correctness. If the findings of the state court meet the indicia outlined in § 2254(d), the state court determination is presumed to be correct. Nevertheless, the presumption and special burden of proof do not operate at all if any one of the eight specified exceptions to the statute exists. These eight exceptions appear to subsume the six *Townsend* criteria. Thus, the determination that one of the six *Townsend* criteria exists necessarily resolves the § 2254(d) burden of proof issue. If one of the *Townsend* criteria is present, the district court must hold an evidentiary hearing and the presumption of correctness does not apply. Conversely, if the presumption is operative, an evidentiary hearing cannot be mandated.
*See also Collins v. Francis*,  728 F.2d 1322, 1344 n.24 (11th Cir. 1984):
Petitioner cites 28 U.S.C. § 2254(d) (eliminating the presumption of correctness ordinarily accorded state habeas court findings when these findings arose out of a hearing that was not full and fair). This rule does not aid us. If we find, when we apply the [*Townsend v.*] *Sain* test, that the district court should have held an evidentiary hearing, we necessarily find, as well, that § 2254(d) applies to eliminate the presumption of correctness. If the *Sain* test does not mandate a hearing, the presumption of correctness necessarily stands. Our focus is on the *Sain* test, not on the § 2254(d) presumption of correctness determination.

[48]     LARRY W. YACKLE, POSTCONVICTION REMEDIES § 134, at 509 (1981).

the federal habeas court granted one in its discretion, and the petitioner could not demonstrate by a preponderance of the evidence that the state court proceeding failed one of the eight statutory standards, then § 2254(d) provided that the state factual findings were presumed to be correct–unless the petitioner showed by "convincing" evidence that the state determinations were erroneous.[49]

The foregoing authorities clearly demonstrate that prior to the AEDPA, the denial of a full and fair hearing defeated the presumption of correctness.[50] The Supreme Court's decision in *Townsend* dictated this defeat because two of the six criteria listed by the Court hinged upon the full and fair hearing requirement. When the requirement was not met, the federal habeas court had to afford the petitioner an evidentiary hearing. At the federal hearing, the presumption of correctness did not apply. Although this point eludes the majority, the inapplicability of the presumption was obvious, for "if *Townsend* indicates sufficient unreliability in the state conclusions so that a new hearing is required, it is reasonable to refuse to give weight to the former conclusions in the new

---

[49]     *Id.* at 508-09. *See Miller v. Fenton*, 474 U.S. 104, 111 (1985) ("When a hearing is not obligatory . . . the federal court 'ordinarily should . . . accept the facts as found' in the state proceeding.") (citation omitted); *Guice v. Fortenberry*, 661 F.2d 496, 501 n.6 (5th Cir. 1981) ("The statute lists eight possible deficiencies in state court fact-findings (rather than the Townsend six); but their relevance is to the question whether the state findings are to be 'presumed' correct. Further, if none of the eight deficiencies is shown, the effect of this is, not to negate the power of the judge to call for a hearing, but, confusingly, to shift to the petitioner the burden to show at a hearing that the state findings were erroneous.") (quoting PAUL M. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1505 n.7 (2d ed. 1973)). *See also Developments in the Law, supra* note 22, at 1144 ("The [1966] amendment seems clearly designed to control the burden and standard of proof in those evidentiary hearings not mandated by *Townsend*.").

[50]     *See Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993) ("The state habeas court found as a matter of fact that the judge was not a personal friend of the victim. Because it did not follow on the heels of a full and fair hearing, this finding is not entitled to the statutory presumption of correctness.").

hearing."[51]

B.      The AEDPA–The Effect of State Factual Findings

The AEDPA repealed former § 2254(d) and replaced it with two new provisions dealing with state court factfindings and factfinding procedures, 28 U.S.C. §§ 2254(d)(2) and 2254(e)(1):

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

. . .

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Professor Yackle interprets the amendments in the following manner:

---

[51]      *Developments in the Law, supra* note 22, at 1142.

Under the former § 2254(d), the presumption of accuracy owed to state findings was contingent on written evidence of the state court's conclusions, sound process in state court, and fair support in the evidentiary record. Indeed, the former § 2254(d) set out its list of procedural and substantive standards as the means by which the federal habeas courts could determine whether state findings were entitled to the presumption. Read literally, the new § 2254(e)(1) preserves the presumption in favor of state court findings, but eliminates both the former requirement that findings must be in writing and any federal standards for the fact-finding process and the evidentiary record in state court. Bluntly stated, it appears that the federal habeas courts must accept state court findings at face value-no questions asked.

A change of that kind would be dramatic and not something that anyone would lightly read into the new law. One can imagine that, in some circumstances at least, serious constitutional questions would be raised by a rule that requires a federal court to accept a factual finding made in state court, with no written statement of the finding on which to focus and with no ability to assess the process out of which that finding emerged and the evidence on which it was based.

Moreover, § 2254(e)(1) must be reconciled with the new version of § 2254(d), which has it that a federal habeas court may award relief on the merits if a state court based its decision against a petitioner on "an unreasonable determination of the facts in light of the evidence." Under that new provision, a federal court can scarcely be

-43-

indifferent to the process by which a state court reached a factual finding or the evidentiary support that finding enjoys.

I read § 2254(e)(1) to drop the specific procedural and substantive standards contained in the former § 2254(d). But I do not read it to dispense with a federal court's rudimentary responsibility to ensure that it is deciding a constitutional claim based on factual findings that were forged in a procedurally adequate way and were anchored in a sufficient evidentiary record. In this sense, § 2254(e)(1) departs from prior law, but only to substitute general notions of procedural regularity and substantive accuracy for detailed statutory standards.[52]

The majority points out that the AEDPA "jettisoned all references to a 'full and fair

---

[52] Yackle, *supra* note 22, at 140-41. Liebman and Hertz assert that new sections 2254(d)(2) and 2254(e)(1) must be read *in pari materia*. "Doing so leads to the conclusion that section 2254(d)(2) divides 'determination[s] of the facts' into two categories – state court factfindings that are flawed because they are 'unreasonable,' hence are a basis for habeas corpus relief without more; and findings that are not flawed because they are '[ ]reasonable,' hence are presumed to be correct unless the petitioner proves otherwise 'by clear and convincing evidence.'" 1 JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 20.2c, at 751 (3d ed. 1998 & Supp. 2000). Thus, "the inquiry required by two . . . superseded subsections – into the 'full[ness], fair[ness], and adequa[cy]' of the state court's 'factfinding procedure,' superseded 28 U.S.C. §§ 2254(d)(2), 2254(d)(6) (1994) – is not appreciably different from the new Act's 'reasonableness' inquiry." *Id.* at 753 n.78. *See Barnett v. Hargett*, 174 F.3d 1128, 1136 (10th Cir. 1999) (presumption of correctness did not attach to state court's historical finding of fact that a pretrial competency hearing was held, because this historical finding was not made at a "full, fair, and adequate hearing"; "presumption of correctness [under 28 U.S.C. § 2254(e)(1)], even for the purely historical fact as to whether a [competency] hearing occurred, . . . does not apply when 'some reason to doubt the adequacy or the accuracy of the fact-finding proceeding' exists").

hearing.'"[53] So, in its view, "[t]o reintroduce a full and fair hearing requirement that would displace the application of § 2254(e)(1)'s presumption [of correctness] would have the untenable result of rendering the amendments enacted by Congress a nullity."[54]  While the deletion of language by Congress is often controlling in the enterprise of statutory construction, AEDPA cannot reasonably be interpreted in such a manner.  Consider the following observations from the late Professor Wright:

> The old statute [former 28 U.S.C. § 2254(d) (1994)] applied to "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia * * *."  The new statute [28 U.S.C. § 2254(e)(1)] applies to "a determination of a factual issue made by a State court * * *."  Thus, at least on its face the new statute does not require that the determination be "after a hearing on the merits" of the factual issue, it does not require that the applicant for the writ and the State or an officer or agent have been parties, and it does not require that the determination be evidenced by written indicia.  Indeed the new statute does not even require that the state court that made the determination have been a court of competent jurisdiction.  Presumably the courts will continue to insist on that and it is likely that some of the other elements that were in the old statute but not in the new one will be read back into it by the courts.[55]

---

[53]     Maj. Op. at 13.

[54]     *Id.* at 14.

[55]     WRIGHT ET AL., *supra* note 14, §4265.2 (Supp. 2001).

-45-

Thus, under the method of construction advanced in the majority opinion, this court could not require sound process, or even competent jurisdiction, in the state court that issued factual findings. Moreover, § 2254(e), unlike its predecessor, does not state that the petitioner's burden of rebutting the presumption of correctness arises "in" a federal evidentiary hearing.[56] Under the majority's construction, this omission means that § 2254(e) does not presuppose that a federal evidentiary hearing is to be held on the basis of *Townsend*, but rather that § 2254(e) speaks to whether a hearing will be conducted in the first instance. But the Fifth Circuit has rejected an interpretation along these lines. In *Clark v. Johnson*,[57] a habeas petitioner complained that the state habeas court did not afford him a full and fair hearing, and thus the federal district court erred in denying him discovery and an evidentiary hearing. After finding that the petition was governed by the AEDPA, the court stated that "[o]ur pre-AEDPA jurisprudence is instructive in evaluating whether the district court's denial of discovery and an evidentiary hearing was an abuse of discretion."[58] After surveying the jurisprudence, the court continued: "To find an abuse of discretion which would entitle Clark to discovery and an evidentiary hearing to prove his contentions, we would necessarily have to find that the state did not provide him with a full and fair hearing. . . ."[59] The court ultimately concluded that the state proceedings did provide Clark with a full and fair hearing.[60] The court's analysis of Clark's claim is significant, however, because it indicates that a state court's denial of a full and fair hearing continues

---

[56] *See supra* text accompanying note 22.

[57] 202 F.3d 760 (5th Cir. 2000).

[58] *Id.* at 766.

[59] *Id.*

[60] *Id.*

to mandate, post-AEDPA, a federal evidentiary hearing pursuant to *Townsend.* Even the majority

acknowledges the continuing validity of the full and fair hearing requirement in this context.[61]

Despite this acknowledgment, the majority finds that *Singleton v. Johnson*[62] "offers Valdez

no support."[63] There, the state habeas court granted the petitioner relief in part and issued findings

of fact. The Texas Court of Criminal Appeals reversed and denied Singleton relief without issuing

an opinion. Concluding that there were no findings to which the presumption of correctness could

apply, we held that the petitioner was entitled to a "full and fair evidentiary hearing" on the factual

issue in dispute.[64] The case was therefore remanded for a "*de novo* evidentiary hearing."[65] The

majority states that we "did not pass upon the question as to whether the absence of . . . [a full and

fair hearing] precluded the operation of § 2254(d)."[66] The majority then asserts that in determining

that the Texas Court of Criminal Appeals reached an adjudication on the merits, this court "implied

that § 2254(d) applied to such a summary disposition, even where the petitioner was entitled to an

---

[61] In support of his argument that the denial of a full and fair state court hearing entitles a petitioner to a federal hearing and defeats the presumption of correctness, Valdez cited *Hughes v. Johnson*, 191 F.3d 607, 630 (5th Cir. 1999) ("When there is a factual dispute, [that,] if resolved in the petitioner's favor, would entitle [him] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing.") (citation omitted). The majority opinion states that "Valdez's reliance on *Hughes* is misplaced" because the court in that case "addressed solely the question of whether Hughes was entitled to an evidentiary hearing." Maj. Op. at 18.

[62] 178 F.3d 381 (5th Cir. 1999).

[63] Maj. Op. at 18.

[64] *Singleton*, 178 F.3d at 385.

[65] *Id.*

[66] Maj. Op. at 18.

evidentiary hearing."[67]  But *Singleton* does not permit this implication.  A hearing *de novo* is a "new hearing of a matter, conducted as if the original hearing had not taken place."[68]  Where such a hearing is ordered, there is no room for deference to the previous court's findings.  Fifth Circuit precedent therefore suggests that the AEDPA did not disturb prior law concerning the circumstances in which a federal evidentiary hearing is mandatory.  Because *Townsend* still governs that question, the denial of a full and fair hearing must render inoperative the statutory presumption of correctness, just as it did prior to the 1996 amendments.[69]

Another weakness in the majority opinion's treatment of the presumption of correctness is its failure to apply § 2254(d)(2).  Although the courts have not made it clear how § 2254(d)(2)'s "invitation to decide whether the state fact determinations were reasonable . . . fit[s] with the presumption that the state fact determinations are correct,"[70] leading scholars contend that reading § 2254(d)(2) and § 2254(e)(1) *in pari materia* yields results similar to those reached when § 2254(d) explicitly provided that the denial of a full and fair hearing defeated the presumption of correctness.[71] In the present case, the state habeas judge did not read the trial transcript, thus depriving Valdez of a full and fair hearing.  In light of this failure, it is disingenuous to conclude that the state court rendered a decision that was based on a reasonable "determination of the facts in light of the *evidence*

---

[67]   *Id.*

[68]   BLACK'S LAW DICTIONARY 725 (7th ed. 1999).

[69]   *See supra* note 26.  *See also Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998).

[70]   WRIGHT ET AL., *supra* note 14, §4265.2 (Supp. 2001).

[71]   *See supra* note 28 and accompanying text.

*presented,*[72] and is therefore entitled to deference. Instead, a faithful application of § 2254(d)(2) supports the approach taken by the federal district court.

In sum, there is a complete absence of support for the majority's holding that a federal court must apply the presumption of correctness when the state court's failure to provide a habeas petitioner with a full and fair hearing necessitates a federal evidentiary hearing. In his brief, Valdez argues that the "AEDPA simply does not address the issue of when a federal evidentiary hearing is required, or the consequence of conducting such a hearing, when the state courts have failed to provide a full and fair hearing." Scholarly commentary on the AEDPA and this court's post-AEDPA jurisprudence overwhelmingly support this argument.

C.    The AEDPA–Conclusions of Law and Mixed Questions of Law and Fact

28 U.S.C. § 2254(d)(1) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable

---

[72]    28 U.S.C. § 2254(d)(2) (emphasis added).

application of, clearly established Federal law, as determined by the Supreme

Court of the United States. . . .

Subsection (d)(1) governs review of questions of law and mixed questions of law and fact when the state court has adjudicated the petitioner's claim on the merits. An "adjudication on the merits" occurs when the state court resolves the case on substantive grounds, rather than procedural grounds.[73] The majority asserts that the mandatory language of § 2254(d)(1) "combined with the meaning of 'adjudication on the merits' leaves no room for judicial imposition of a full and fair hearing prerequisite."[74] However, in *Morris v. Cain*,[75] this court stated: "A full and fair adjudication of a petitioner's claims in state court is a prerequisite for application of AEDPA's review provisions."[76] Moreover, in *Corwin v. Johnson*,[77] we declared: "In this Circuit, provided the state court conducted a full and fair adjudication of the petitioner's claims, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1)."[78]

Addressing this clear precedent, the majority opinion states that "[t]o the extent that these references to a 'full and fair' adjudication refer to a full and fair state court hearing, they were dicta. Neither in *Morris* nor in *Corwin* were we confronted with a claim that the petitioner had been denied

---

[73]     *See Mercadel v. Cain*, 179 F.3d 271, 273 (5th Cir. 1999).

[74]     Maj. Op. at 15.

[75]     186 F.3d 581 (5th Cir. 1999).

[76]     *Id.* at 584.

[77]     150 F.3d 467 (5th Cir. 1998).

[78]     *Id.* at 471.

a full and fair hearing."[79]  The majority further asserts that "[a]part from being dicta, these references also appear to conflate the adjudication on the merits requirement with a full and fair hearing requirement, referring to the adjudication on the merits as a 'full and fair adjudication on the merits.'"[80] This assertion is questionable, however, in light of the discrete meaning of "adjudication on the merits" and the statement made earlier in the majority opinion that the phrase "does not speak to the quality of the process."[81]  The better view is that the "full and fair hearing" and "adjudication on the merits" requirements retain independent significance.[82]  This view is supported by the Supreme Court's unanimous opinion in *Michael Williams v. Taylor*.[83]  There, the Court addressed a habeas petitioner's entitlement to an evidentiary hearing under § 2254(e)(2):

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a ***full and fair*** adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. . . .  Yet comity is not served by

---

[79]  Maj. Op. at 17.

[80]  *Id.*

[81]  *Id.* at 15.

[82]  Indeed, in *Singleton v. Johnson*, 178 F.3d 381, 384-85 (5th Cir. 1999), this court concluded that the Texas Court of Criminal Appeals' denial of relief constituted an adjudication on the merits, but nevertheless remanded the case for a "full and fair evidentiary hearing." *See supra* text accompanying notes 38-45.

[83]  529 U.S. 420 (2000).

saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2).[84]

The Court's use of the phrase "full and fair" evinces its concern for the quality of the state court process. Indeed, the Court refused "to attribute to Congress a purpose or design to bar evidentiary hearings for diligent prisoners with meritorious claims just because the prosecution's conduct went undetected in state court."[85]

In explaining its statutory interpretation, the majority complains that Valdez would have the court apply the full and fair hearing requirement to a deferential scheme as to conclusions of law and mixed questions of law and fact that did not exist prior to the AEDPA, thereby rendering null the amendments enacted by Congress. But Valdez merely asserts that the AEDPA does not address the precise issue presently before the court. Moreover, his argument suggests that the amendments should be interpreted in a manner that comports with traditional notions of constitutional due process. It is a "cardinal principle" that if it is "fairly possible" to construe an act of Congress to avoid a constitutional question, then the statute should be interpreted in that way.[86] The majority holds that the AEDPA prohibits a federal court from examining the process by which the state court arrived at its decision. This holding raises serious constitutional questions. As stated by Professor Yackle: "In

---

[84]     *Id.* at 437 (emphasis added).

[85]     *Id.* at 434-35.

[86]     *Crowell v. Benson*, 285 U.S. 22, 62 (1932). *See also United States v. X-Citement Video*, 513 U.S. 64, 73 (1994) ("[W]e do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution as construed by this Court.").

the preclusion context, the Supreme Court has said that federal courts need not respect state judgments unless litigants had a 'full and fair opportunity' to litigate their claims in state court . . . and has made it clear that, at a minimum, the measure of that opportunity is due process in the constitutional sense."[87] These teachings apply with equal force to the present case. Furthermore, in his concurring opinion in *Terry Williams v. Taylor*,[88] Justice Stevens found:

> A construction of AEDPA that would require the federal courts to cede th[e]
> authority [to interpret federal law] to the courts of the States would be inconsistent
> with the practice that federal judges have traditionally followed in discharging their
> duties under Article III of the Constitution. If Congress had intended to require such
> an important change in the exercise of our jurisdiction, we believe it would have
> spoken with much greater clarity than is found in the text of AEDPA.[89]

---

[87]     Yackle, *supra* note 22, at 141 n.21 (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 (1982)).

[88]     529 U.S. 362 (2000).

[89]     *Id.* at 379. The Court's construction of § 2254(d)(1) in *Terry Williams* does not eliminate all constitutional concerns. Liebman and Hertz observe:

> Although Terry Williams' *certiorari* petition contended, *inter alia*, that Congress, via section 2254(d)(1), cannot constitutionally bar a federal court from granting habeas corpus relief from a state court decision of law that the federal court independently adjudges to violate federal law in effect when the state court ruled, . . . the Supreme Court denied *certiorari* on that question, . . . and neither of the two majority opinions in *Williams* addressed it. . . . The question of section 2254(d)(1)'s constitutionality remains open, therefore, and may be decisive in the rare close case in which the Court's interpretation of section 2254(d)(1) bars a federal habeas corpus court from issuing the writ despite independently concluding . . . that a state court custodial judgment violates the United States Constitution.

2 LIEBMAN & HERTZ, *supra* note 28, § 30.2d (Supp. 2000).

This uncertainty as to Congressional intent places the majority's advancement of deference without regard to whether due process was afforded in the state court on shaky ground. A more solid interpretation of the AEDPA would be one that observes ordinary constitutional due process standards.

D.      The AEDPA, "Deference," and Other Circuits

In *Miller v. Champion*,[90] the Tenth Circuit recognized that:

[Although] [f]ederal courts entertaining habeas petitions must give a presumption of correctness to state courts' factual findings, . . . [t]his presumption of correctness does not apply . . . if the habeas petitioner did not receive a full, fair, and adequate hearing in the state court proceeding on the matter sought to be raised in the habeas petition.[91]

Whereas the district court cited *Miller* in support of its decision, the majority declines to adopt its approach and declares that *Miller* rests on "tenuous footing" because the Tenth Circuit relied on its pre-AEDPA jurisprudence.[92] This conclusion, however, ignores the reality that every circuit,

_____

[90]      161 F.3d 1249 (10th Cir. 1998).

[91]      *Id.* 1254 (quoting *Nguyen v. Reynolds*, 131 F.3d 1340, 1359 (10th Cir. 1997)).

[92]      *See* Maj. Op. at 19.

including this one, has continued to apply pre-AEDPA cases in appropriate circumstances.[93] The court in *Miller* clearly held, *post-AEDPA*, that the failure of a state court to conduct a full and fair evidentiary hearing precluded AEDPA's deference to the state court's mixed law and fact conclusions.[94]

Casting aside the Tenth Circuit decision, the majority relies instead on the "Fourth Circuit's view of AEDPA deference."[95] The majority opinion discusses the Fourth Circuit's *en banc* decision in *Bell v. Jarvis.*[96] In *Bell*, the petitioner was convicted of multiple counts of sexual misconduct. While direct appeal and state post-conviction review were denied summarily by the North Carolina state courts, the federal habeas courts evaluated the petitioner's constitutional claims with a much closer degree of scrutiny. The district court denied habeas relief. On appeal, a divided panel of the Fourth Circuit reversed the district court's ruling and granted habeas relief. But on rehearing *en banc*, the full Fourth Circuit affirmed the district court's denial of relief.

In the course of its ruling, the *en banc* court had occasion to reconsider, with guidance from *Terry Williams*, the application of 28 U.S.C. § 2254(d)(1) to state court summary affirmances. It interpreted *Terry Williams* to mean that the only question remaining after AEDPA was "whether the state court's adjudication of the claims before it was a reasonable one in light of the controlling

---

[93]  In interpreting the AEDPA, even the Supreme Court "thus far has paid rather close attention to its own precedents. . . ." 1 LIEBMAN & HERTZ, *supra* note 28, § 2.2, at 14 n.13 (citing *Hohn v. United States*, 524 U.S. 236 (1998); *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998); *Calderon v. Thompson*, 523 U.S. 538 (1998)).

[94]  *See Miller*, 161 F.3d at 1254.

[95]  Maj. Op. at 19.

[96]  236 F.3d 149 (4th Cir. 2000).

Supreme Court law."[97] Finding that *Terry Williams* left it no choice but to overrule an earlier line of cases that allowed federal habeas courts to independently ascertain whether constitutional rights were violated when the state courts had not articulated their reasoning, the majority concluded that, under AEDPA, federal courts are "no longer permitted to review de novo [state court] decisions on the merits."[98] It also concluded that whether or not there was, in fact, a constitutional violation "is not an essential part of the inquiry under § 2254(d)."[99] For a number of reasons, the majority's invocation of *Bell* is cause for concern.

First, *Bell*'s analytical method is flawed. When *Terry Williams* is read along with *Weeks v. Angelone*[100] (decided just before *Terry Williams*) and *Ramdass v. Angelone*[101] (decided soon after *Terry Williams*), it becomes clear that "federal courts should adjudicate habeas corpus claims by first performing the court's traditional function of analyzing the merits of the federal constitutional claim"[102] and only then assessing whether § 2254(d)(1) precludes habeas relief even though the court has found a constitutional violation.[103] The Fourth Circuit never determined whether a constitutional

---

[97]     *Id.* at 162.

[98]     *Id.* at 163.

[99]     *Id.*

[100]     528 U.S. 225 (2000).

[101]     530 U.S. 156 (2000).

[102]     2 LIEBMAN & HERTZ, *supra* note 28, § 30.2c (Supp. 2000).

[103]     *See Van Tran v. Lindsey*, 212 F.3d 1143, 1155 (9th Cir. 2000) (relying on *Terry Williams* to "hold that, when analyzing a claim that there has been an unreasonable application of federal law, we must first consider whether the state court erred; only after we have made that determination may we then consider whether any error involved an unreasonable application of controlling law within the meaning of § 2254(d)"; "Requiring federal courts to first determine whether the state court's decision was erroneous, prior to considering whether it was contrary to or

violation occurred. Instead, it contented itself with the general finding that the state court result was not unreasonable, even though the state court had denied relief summarily without identifying a federal rule of decision.

Second, the *Bell* court simply did not consider whether the state court denied the petitioner a full and fair hearing. Although the majority states that *Bell* implies that there is no full and fair hearing requirement under the AEDPA, the Fourth Circuit kept its focus on the summary nature of the state court's disposition.

Finally, the majority generally advocates the "sweeping" view of "AEDPA deference" championed by the Fourth Circuit.[104] But in *Terry Williams,* Justice Stevens issued a reminder "that the word 'deference' does not appear in the text of the statute itself."[105] Furthermore, in *Van Tran v. Lindsey*,[106] the Ninth Circuit recognized that in *Terry Williams:*

> [T]he Court rejected the interpretation, adopted in various forms by the Fourth, Fifth, Seventh, and Eleventh Circuits, that defines reasonableness on the basis of whether "reasonable jurists" could disagree about the result reached by the state court. Instead, the Court adopted an "objectively unreasonable" standard, employing the language used in decisions by the Third and Eighth Circuits. We think it significant

---

involved an unreasonable application of controlling law under AEDPA, promotes clarity in our own constitutional jurisprudence and also provides guidance for state courts, which can look to our decisions for their persuasive value. . . . Such a rule also respects our duty, as Article III judges, to say 'what the law is.'") (quoting *Terry Williams*, 529 U.S. at 378 (Stevens, J., concurring)).

[104] *See* Maj. Op. at 19-20.

[105] *Terry Williams,* 529 U.S. at 386 (Stevens, J., concurring).

[106] 212 F.3d 1143 (9th Cir. 2000).

that the Third and Eighth circuits adopted that test, rather than the tests developed by other circuits, because they determined that the other circuits' tests were too deferential. The Supreme Court thus chose to adopt the interpretation of AEDPA that espoused the more robust habeas review.[107]

In *Gardner v. Johnson*,[108] we noted the "insightful observation" made in *Van Tran* and agreed that the rejection of the "reasonable jurists" standard as "too deferential" to state courts clearly implies that the Supreme Court in *Terry Williams* "preferred a more stringent habeas review of state court decisions."[109] Consequently, the majority's desire for broad, sweeping, and unchecked deference to state court adjudications finds no support in the precedents of either the Fifth Circuit or the Supreme Court.

*Bell* provides no basis for overturing the district court's ruling, particularly since the district court relied on the Tenth Circuit's approach in *Miller,* which is both analytically sound and relevant to the present case.

## III.    Conclusion

My greatest disappointment with the majority opinion concerns my colleagues' apparent belief that silence in the text of the AEDPA signifies affirmative repudiation by Congress of the pre-existing body of habeas corpus law, including "general notions of procedural regularity and substantive

---

[107]    *Id.* at 1150-51.

[108]    247 F.3d 551 (5th Cir. 2001).

[109]    *Id.* at 559-60.

accuracy."[110]  Although the majority's approach may constitute sound statutory construction in appropriate instances, in the present case it ignores the delicate balance struck by the Supreme Court among competing concerns of federalism, due process, Article III jurisdiction, faithfulness to Congressional enactments, and the importance of the Great Writ to our legal tradition.[111]  *Townsend v. Sain* has life remaining and, in the present case, it supports the district court's determination that, where there had been a denial of a full and fair hearing before the state habeas court, the AEDPA's review provisions, as set forth in 28 U.S.C. §§ 2254(d) and (e), di d not apply.  Thus, for the foregoing reasons, I respectfully dissent.

---

[110]  *See supra* text accompanying note 28.

[111]  The Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. CONST. art. I., § 9, cl. 2.  Alexander Hamilton proclaimed the necessity of this provision in the following manner:
> Arbitrary impeachments, arbitrary methods of prosecuting pretended offences, and arbitrary punishments upon arbitrary convictions have ever appeared to me to be the great engines of judicial despotism; and these have all relation to criminal proceedings. The trial by jury in criminal cases, aided by the *habeas corpus* act, seems therefore to be alone concerned in the question.  And both of these are provided for in the most ample manner in the plan of the convention.

THE FEDERALIST NO. 83, at 562-63 (Alexander Hamilton) (J.E. Cooke ed., 1961).  *See also Brecht v. Abrahamson*, 507 U.S. 619, 650 (1993) (O'Connor, J., dissenting) ("[D]ecisions concerning the Great Writ warrant restraint, for we ought not take lightly alteration of that fundamental safeguard against unlawful custody.") (internal quotations and citations omitted).