# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2022

Lyle W. Cayce
Clerk

No. 19-70011

George E. McFarland,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-3916

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.
Per Curiam:

George McFarland has been on death row for almost 30 years. After exhausting his state remedies, he filed a petition for a writ of habeas corpus in federal district court. The district court denied the petition. This Court granted McFarland's application for a certificate of appealability (COA) as to his claims of ineffective assistance of counsel, a violation of his Sixth Amendment rights, and a *Brady* claim. We affirm the district court's denial of federal habeas relief.

No. 19-70011

# I

In November 1991, George McFarland and an accomplice robbed Kenneth Kwan, a grocery store owner, when Kwan and his security guard returned to the store with cash for the payroll.[1] McFarland's accomplice pressed a gun against the security guard's head and Kwan ran towards the store. The guard dropped his weapon; McFarland or the accomplice then fatally shot Kwan. Only McFarland was prosecuted.

The State offered two key witnesses. Carol Bartie was the only eyewitness to identify McFarland as the shooter.[2] At the scene, she told officers that "It all happened so fast that I don't think that I will be able to identify either one of the guys who robbed the store." However, Bartie later identified McFarland as the shooter in a photo spread in December, in a police line-up in January, and at trial. On January 2, 1992, a magistrate judge issued a warrant for McFarland's arrest. Bartie identified McFarland in a police lineup the next day conducted without counsel present. On January 4, a formal criminal complaint was filed charging McFarland with capital murder.

The State's other key witness was Craige Burks, McFarland's nephew, who called the local Crime Stoppers hotline to turn in his uncle. However, there were several inconsistencies between Craige's testimony at trial and his testimony before the grand jury about who shot Kwan and where McFarland was when he admitted to the crime. At trial, Craige testified that McFarland admitted to shooting Kwan while riding alone in a car with

---

[1] There was possibly a third accomplice acting as the driver.

[2] James Powell, the security guard, testified that he was not sure who shot Kwan. Another eyewitness testified that he could not tell who shot Kwan as at least one of the men had on a ski mask.

No. 19-70011

Craige. However, Craige testified before the grand jury that McFarland told him at a family member's house that the accomplice was the shooter and that his father heard McFarland's admission. But Walter Burks, Craige's father, testified before the grand jury that McFarland never admitted to killing Kwan.

## II

During trial, the judge confronted a problem. McFarland's retained counsel, John Benn was sleeping throughout significant portions of the trial and otherwise presented as unprepared. Concerned, the trial judge decided to appoint additional counsel. McFarland refused to sign a request form to appoint counsel, but the judge appointed Sanford Melamed to serve as "second chair." Melamed was an experienced criminal defense lawyer but he had yet to try a capital case. The trial judge instructed Melamed that Benn was to serve as the "lead lawyer" in this case and that "Benn was to be in charge." While the trial judge repeatedly asked McFarland whether he wanted to continue with Benn as primary counsel, it is unclear that the trial judge ever expressly told McFarland that he was concerned with Benn's trial preparation and competence. Each time, McFarland affirmed that he wanted to keep Benn as counsel because he believed that Melamed was appointed to "sabotage his case."

## III

Benn and Melamed's contact before trial was "virtually non-existent." Without a joint trial strategy, Melamed prepared and filed motions on his own "as if [he] was going to have to do everything." Melamed hired an investigator to try to locate eyewitnesses aside from the State's witnesses, photograph the crime scene, and review ballistic reports. However, neither Melamed or Benn ever interviewed the State's key witnesses, the other alleged accomplice in the robbery, or Walter Burks.

No. 19-70011

Following the determination of McFarland's guilt at trial, Melamed visited McFarland to seek potential mitigation witnesses. McFarland requested that Melamed not contact his family members, and Melamed honored McFarland's wishes. Benn claimed he would lead the sentencing phase, so Melamed assumed that Benn would make preparations for the mitigation case, including discussing potential witnesses with McFarland. However, Melamed's direct examination of three mitigation witnesses in this phase totaled fifteen minutes, and Melamed had secured all of the witnesses despite his constrained role. The jury convicted McFarland of capital murder during the course of a robbery and sentenced him to death in 1992.

With separate post-trial counsel, McFarland appealed, but the Texas Court of Criminal Appeals (TCCA) affirmed McFarland's conviction and sentence on direct appeal.[3] McFarland then filed a state habeas petition. The TCCA denied habeas relief.[4]

State remedies exhausted, McFarland filed a habeas petition in federal court. The district court denied relief. This Court then granted McFarland's COA on four issues: whether he was denied effective assistance of counsel under *Cronic*; whether he was denied effective assistance of counsel under *Strickland*; whether he was improperly denied counsel under the Sixth Amendment during the police line-up; and whether there was a *Brady* violation.[5]

---

[3] *McFarland v. State*, 928 S.W.2d 482, 524 (Tex. Crim. App. 1996) (per curiam).

[4] *See Ex parte McFarland*, 163 S.W.3d 743, 760 (Tex. Crim. App. 2005) (per curiam).

[5] *McFarland v. Davis*, 812 F. App'x 249, 250 (5th Cir. 2020) (per curiam).

No. 19-70011

## IV

In reviewing a district court's denial of a writ of habeas corpus, we review de novo the district court's disposition of issues of law and mixed issues of law and fact.[6] We review the district court's factual determinations for clear error.[7]

The rules are now rote. Under 28 U.S.C. § 2254(d)(1), federal courts may not grant habeas relief to a person in state custody unless the state court's decision was "contrary to" or an "unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States."[8] Federal courts must also presume that the state court's factual findings are correct unless the petitioner rebuts that presumption by clear and convincing evidence.[9]

## V

McFarland presents two claims that he was denied effective assistance of counsel. He argues that he was constructively denied assistance of counsel and prejudice should be presumed under *United States v. Cronic*; alternatively, that his counsel was ineffective by the metric of *Strickland v. Washington* due to his counsel's deficient performance in preparing for trial; cross-examining the State's key witnesses; performing the sentencing phase of trial; and presenting closing remarks to the jury at the sentencing phase.

To succeed on a claim of ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was

---

[6] *Lee v. Cain*, 519 F. App'x 869, 876 (5th Cir. 2013).

[7] *Id.*

[8] 28 U.S.C. § 2254(d)(1).

[9] 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001).

No. 19-70011

deficient and this deficiency prejudiced the petitioner.[10] However, under *Cronic*, prejudice may be presumed when there is actual or constructive denial of assistance of counsel.[11] A constructive denial of effective assistance of counsel arises "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."[12] We review the district court's analysis of McFarland's *Strickland* and *Cronic* claims under AEDPA in turn.

**A**

McFarland first argues that the TCCA's rejection of his *Cronic* claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. In determining whether a state habeas decision was contrary to or an unreasonable application of clearly established Supreme Court precedent under AEDPA, the first inquiry is whether there is clearly established Supreme Court precedent.[13] We have interpreted *Cronic* to require a presumption of prejudice when a defendant's attorney repeatedly slept through a critical stage of the criminal proceeding.[14] The TCCA acknowledged that "the applicant did not have Mr. Benn's active assistance"

---

[10] *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

[11] *Id.* at 692; *see also United States v. Cronic*, 466 U.S. 648, 659–66 (1984).

[12] *Cronic*, 466 U.S. at 659–60.

[13] *Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017).

[14] *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (en banc).

during critical stages of trial,[15] but it nevertheless denied McFarland's *Cronic* claim because McFarland "was never without counsel."[16]

We are aware of no case where a sleeping co-counsel alone triggers *Cronic*'s presumption of prejudice. McFarland cannot show that his counsel failed to function in any meaningful sense because, at every stage of trial, he also enjoyed effective assistance by Melamed. As such, the TCCA's decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent. The district court properly denied habeas relief as to McFarland's *Cronic* claim.

## B

McFarland next challenges the TCCA's reading of the record and argues that the TCCA's rejection of his *Strickland* claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. First, that Melamed could not locate McFarland's suggested witnesses, including for the guilt phase.[17] McFarland claims Melamed never asked for a list of potential witnesses for the guilt phase; rather, that he provided a list of witnesses at the sentencing phase but asked Melamed not to contact them. As to his first point, the record evidence as to when in the proceedings Melamed asked for a list of witnesses is conflicting. McFarland also challenges the TCCA's reading that he refused to allow Melamed to call witnesses "to challenge the competency and credibility of Craige Burks— one of the State's star witnesses;"[18] rather, McFarland claims he only rejected Melamed's suggestion that he challenge Craige's mental

---

[15] *Ex parte McFarland*, 163 S.W.3d at 752.

[16] *Id.* at 753.

[17] *Id.* at 754–55.

[18] *Id.*

competency to testify, not that he objected to impeaching Craige.[19] But the TCCA acknowledged that McFarland rejected calling a witness to challenge Craige's competence.[20] McFarland failed to provide clear and convincing evidence to rebut the TCCA's reading of the record.[21]

McFarland next challenges the district court's review of the TCCA under AEDPA as well as the TCCA's underlying determination. We address each in turn. McFarland claims that the district court erred by "review[ing] only the state outcome for reasonableness." To the extent that McFarland is asserting that the district court improperly applied its own reasoning for that of the TCCA, our review of the district court's opinion confirms that the district court did review the reasons given by the TCCA. To the extent McFarland challenges the district court's review of the TCCA decision, our review of the state habeas court likewise confirms that McFarland cannot show that the TCCA's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent.

"Review of *Strickland* claims is always deferential, and when we review a state court determination under AEDPA, review is 'doubly deferential.'"[22] As such, McFarland faces a high burden to show that he is entitled to federal habeas relief on his *Strickland* claim.

We find that McFarland fails to meet this high burden for each of his counsel's purported deficiencies. As to McFarland's claim that his counsel was deficient in their pretrial preparation, McFarland cannot show that it was

---

[19] Craige was previously institutionalized for depression.

[20] *Ex parte McFarland*, 163 S.W.3d at 755.

[21] 28 U.S.C. § 2254(e)(1); *Valdez*, 274 F.3d at 948.

[22] *Smith v. Davis*, 927 F.3d 313, 334 (5th Cir. 2019) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)); *see also Thomas v. Lumpkin*, 995 F.3d 432, 446–47 (5th Cir. 2021).

"objectively unreasonable for the state habeas court to conclude that defense counsel's representation . . . was constitutionally adequate."[23] The TCCA found that Melamed made a strategic decision not to interview the State's eyewitnesses, instead choosing to use his limited resources to attempt to find other, potentially more cooperative witnesses.[24] Melamed either could not locate McFarland's suggested witnesses or McFarland refused to allow Melamed to call certain witnesses.[25] McFarland also failed to demonstrate how the failure to conduct additional pretrial investigation prejudiced him.[26] The district court did not err in denying federal habeas relief on this ground.

As to McFarland's claim that his counsel was deficient in its cross-examination of key witnesses, McFarland cannot show that the TCCA's decision was unreasonable. The TCCA found that counsel's "failure to cross-examine the witnesses on certain discrepancies did not fall below an objective standard of reasonableness" because "cross-examination is inherently risky, and a decision not to cross-examine a witness is often" strategic.[27] Counsel did cross-examine Craige and Bartie and challenge their testimony, just not on the grounds that McFarland wanted.[28] McFarland fails here to show prejudice.[29] The district court did not err in denying federal habeas relief on this ground.

---

[23] *Thomas*, 995 F.3d at 446–47.

[24] *Ex parte McFarland*, 163 S.W.3d at 754.

[25] *Id.* at 754–55.

[26] *Id.* at 755.

[27] *Id.* at 756.

[28] *Id.*

[29] *Id.*

No. 19-70011

Finally, as to McFarland's claim that his counsel was deficient in its performance at the sentencing phase of trial, McFarland cannot show that the TCCA's decision was unreasonable. The TCCA found that counsel's failure to call additional mitigation witnesses did not constitute ineffective assistance of counsel as McFarland told Melamed not to contact potential mitigation witnesses.[30] Because McFarland only offered one potential mitigation witness in his writ—a lawyer who previously represented McFarland for a separate robbery—the TCCA also found that McFarland could not show prejudice as the State's cross-examination of that witness would not have produced positive testimony.[31] As to Benn's closing statement that "killing one man is not going to bring back the life of another man," it could have been viewed as acceptance of "what the jury had already decided" rather than an admission of guilt; and Melamed had already provided his own separate closing statement.[32] The district court did not err in denying federal habeas relief on this ground.

In sum, the district court properly denied habeas relief as to McFarland's *Cronic* and *Strickland* claims.

## VI

McFarland next argues that he was denied his Sixth Amendment right to counsel because he did not have counsel present during a police lineup. A defendant's right to counsel under the Sixth Amendment attaches when "adversary judicial proceedings have been initiated against him."[33] Once the right to counsel attaches, the defendant is entitled to the presence and

---

[30] *Id.* at 758.

[31] *Id.* at 757–58.

[32] *Id.*

[33] *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).

No. 19-70011

assistance of counsel at critical stages of prosecution, including postindictment police line-ups.[34] We again review McFarland's claim under the confines of AEDPA.

McFarland's claim turns on when McFarland's right to counsel attached: before the police line-up (when the arrest warrant and affidavit establishing probable cause for the arrest were issued on January 2, 1992) or sometime after the police line-up (when the State filed a criminal complaint against McFarland on January 4, 1992). Attachment is determined by state law.[35] There is no bright-line rule under Texas state law to determine when adversarial proceedings are initiated giving rise to right to counsel.[36] A defendant does not have a right to counsel under the Sixth Amendment when he is arrested on a warrant, taken before a magistrate judge, and is in jail at the time of the line-up before formal charges have been filed.[37] A defendant does have a Sixth Amendment right to counsel when a formal complaint and information are filed.[38]

The TCCA held that "[a]lthough prior precedent has not distinctly identified the point at which formal adversarial proceedings have begun, we may glean enough from the cases to say with confidence that appellant's Sixth Amendment right to counsel had not attached at the time of his line-up."[39] A formal complaint or indictment had yet to be filed against

---

[34] *United States v. Wade*, 388 U.S. 218, 237 (1967).

[35] *See, e.g.*, *Green v. State*, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994) (looking to state law to determine when the right to counsel attached); *see also Moore v. Illinois*, 434 U.S. 220, 228 (1977).

[36] *Id.*

[37] *Garcia v. State*, 626 S.W.2d 46, 53 (Tex. Crim. App. 1981).

[38] *McCambridge v. State*, 712 S.W.2d 499, 502 (Tex. Crim. App. 1986).

[39] *McFarland*, 928 S.W.2d at 507.

No. 19-70011

McFarland at the time of the lineup, nor had he been taken before a magistrate judge for an Article 15.17 hearing.[40] McFarland's federal habeas claim arising under the Sixth Amendment fails because he cannot show that the TCCA's finding that his arrest warrant was not a formal criminal complaint giving rise to his right to counsel was contrary to or an unreasonable application of Supreme Court precedent. The district court properly denied habeas relief as to McFarland's Sixth Amendment claim.

## VII

Finally, McFarland argues that the State suppressed exculpatory evidence, specifically Walter's grand jury testimony that McFarland did not admit to the murder. Under *Brady v. Maryland*, a petitioner must show that there is favorable evidence, such as exculpatory or impeaching evidence; the evidence was willfully or inadvertently suppressed by the State; and the lack of disclosure prejudiced the petitioner.[41] We review the district court's analysis of McFarland's claim under AEDPA.

The state habeas record is ambiguous as to whether the State failed to disclose this evidence to defense counsel. Melamed was permitted to view the State's file and take notes but was not allowed to take copies from the file. Melamed also took notes on Craige's grand jury testimony. McFarland nevertheless contends that Melamed's lack of recollection of receiving Walter's grand jury testimony coupled with the importance of this exculpatory evidence is "highly probative evidence that the State did not disclose [the exculpatory evidence]."

---

[40] *Id.*

[41] *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

No. 19-70011

Federal habeas review is limited to the record that was before the state court that adjudicated the petitioner's claim on the merits.[42] The TCCA determined that "the prosecution did not fail to disclose. The State's file containing the information was available to appellant's trial attorneys."[43] The district court properly denied habeas relief as to this claim.

## VIII

McFarland's federal habeas claims do not withstand the high deference afforded to state court decisions adjudicated on the merits under AEDPA. We AFFIRM the district court's denial of federal habeas relief.

---

[42] *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

[43] *McFarland*, 928 S.W.2d at 511.